Terry Lee HUFF, Appellant,

v.

COMMONWEALTH of
Kentucky, Appellee.

No. 87–SC–664–MR.

Supreme Court of Kentucky.

Nov. 17, 1988.

Rehearing Denied Feb. 9, 1989.

Mark A. Posnansky, Asst. Public Advocate, Frankfort, for appellant.

Frederic J. Cowan, Atty. Gen., Frankfort, Denise A. Garrison, Asst. Atty. Gen., for appellee.

## OPINION OF THE COURT

Appellant was indicted September 19, 1986, on a charge of murder. At a pre-trial hearing, appellant attacked the constitutionality of KRS 532.055 and KRS 439.-3401, and filed proper motion to have these two statutes declared unconstitutional. After hearing, the motion was denied, whereupon appellant entered a plea of guilty to the charge. He advised the court that said plea was a conditional plea, entered pursuant to RCr 8.09, which reads:

> With approval of the court and the consent of the Commonwealth, a defendant may enter a conditional plea of guilty, reserving in writing the right, on appeal from the judgment, to review the adverse determination of any specified trial or pre-trial motion. If the defendant prevails on appeal, he shall be allowed to withdraw his plea.

### KRS 532.055

The appellant expends a great part of his argument regarding this statute on the issue of separation of powers. The arguments made herein are identical to the ones considered by this court in *Commonwealth v. Reneer*, Ky., 734 S.W.2d 794 (1987), in which case we declined to hold the statute unconstitutional on the grounds that it violated the separation of powers, and "accept[ed] its provisions for the time being under the principle of comity." P. 798.

The new argument advanced by the appellant concerns KRS 532.055(2)(a). This section applies to the sentencing phase of the bifurcated trial procedure provided by this statute and specifies that, once a jury has determined the defendant to be guilty

of a crime in its verdict in the initial phase of the trial (after guilt or innocence is determined), it may introduce certain matters, including

(a) evidence may be offered by the Commonwealth relevant to sentencing, including:

1. Minimum parole eligibility, prior convictions of the defendant, both felony and misdemeanor;

The statute herein attacked is a portion of the "Truth-in-Sentencing" package adopted by the Kentucky General Assembly in 1986, the avowed purpose of which was to remove the veil of uncertainty and speculation from the jury and to provide each jury with more accurate information concerning the defendant on trial. As we have noted, this evidence is made known *only* after a predetermination of guilt.

■ The Supreme Court of the United States has examined in several cases the questions before us. In the case of *California v. Ramos*, 463 U.S. 992, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983). Justice O'Connor, in her majority opinion, cites ALI Model Penal Code § 210.6 (Prop. Off. Draft 1962), in which it is stated:

... the court at the sentencing state shall inform the jury of the nature of the sentence of imprisonment that may be imposed, *including its implication with respect to possible release upon parole*, if the jury sentence is against sentence of death. (Emphasis ours).

In *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), the court stated:

We think it advisable for the jury to have as much information before it as possible when it makes the sentencing decision.

*Gregg* further held:

It is certainly not a novel proposition that discretion in the area of sentencing be exercised in an informed manner. We have long recognized that [f]or the determination of sentences, justice generally requires ... that there be taken into account the circumstances of the offense, together with the character and propensities of the offender. (Citing cases.)

### KRS 439.3401

This statute reads as follows:

**439.3401. Parole for violent offenders.**—(1) As used in this section, "violent offender" means any person who has been convicted of or pled guilty to the commission of a capital offense, Class A felony, or Class B felony involving the death of the victim, or rape in the first degree or sodomy in the first degree of the victim, or serious physical injury to a victim.

(2) A violent offender who has been convicted of a capital offense (and has not been sentenced to twenty-five (25) years without parole), or a Class A felony and receives a life sentence, or to death and his sentence is commuted to a life sentence shall not be released on parole until he has served at least twelve (12) years in the penitentiary.

(3) A violent offender who has been convicted of a Class A felony with a sentence of a term of years or Class B felony who is a violent offender shall not be released on parole until he has served at least fifty percent (50%) of the sentence imposed.

(4) This section shall apply only to those persons who commit offenses after July 15, 1986.

Appellant challenges the constitutionality of this statute on three grounds. First, he contends that it violates the due process clause of the Fourteenth Amendment of the U.S. Constitution and Section 2 of the Kentucky Constitution. Second, he argues that it denies equal protection guaranteed by both constitutions; and, third, he argues that it is unconstitutionally vague in its application.

■ All three arguments are predicated upon the possibility of the results emanating from the difference between one who has been sentenced to life imprisonment and who has a *minimum* eligibility for parole of 12 years, and one who has been sentenced to a term of years and who has a *minimum* eligibility for parole of at least

50% of the sentence imposed. This means, of course, that one who receives a sentence of 25 years or more has a minimum parole eligibility in excess of one who receives a life sentence—a sentence which the layman considers a longer sentence. We do not find this a matter of constitutional violation but a matter to be considered by juries in affixing sentences.

Appellant does not argue that the classification of crimes and length of stay in the penitentiary is other than a prerogative of the legislature, and indeed could not. *See Rummell v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980); *Rudolph v. Corrections Cabinet of Kentucky*, Ky., 710 S.W.2d 235, 236 (1986). The entire attack on KRS 439.3401 is predicated on the *possible* disparity in sentencing which may exist in the minimum for parole eligibility.

A life sentence in Kentucky is a parolable offense. Life without parole was abolished as a possible sentence many years ago. The history of parole eligibility for life sentences is a varying one. It has ranged from a six-year minimum, then to seven, then eight, and now to its present minimum eligibility for violent offenders of 12 years. The argument could be made that any minimum period of years affixed by the legislature is arbitrary, but we do not agree.

We do not find the minimum imposed by the legislature to be arbitrary or capricious in any way. It is the uncertainty of life itself, not a declaration of a minimum eligibility, which creates a possible disparity. For example, a life sentence imposed on a 60–year–old defendant is not the same as a life sentence imposed upon a 20–year–old defendant.

We would again call to the attention of the appellant the fact that this is a minimum period of parole eligibility and is thus only one of the factors to be considered in the granting of parole.

Under all the circumstances, we do not find this statute unconstitutional in its treatment of violent offenders.

The ruling of the lower court on the constitutionality of KRS 532.055 and KRS 439.3401 is affirmed.

STEPHENS, C.J., and GANT, STEPHENSON, VANCE and WINTERSHEIMER, JJ., concur.

LAMBERT and LEIBSON, JJ., dissent.

GANT, J., files a separate concurring opinion in which STEPHENSON, J., joins.

LEIBSON, J., files a dissenting opinion in which LAMBERT, J., joins, except that portion which discusses whether judicial or jury sentencing is preferable.

GANT, Justice, concurring.

I concur with the majority opinion herein, based upon my concurrence in *Commonwealth v. Reneer*, Ky., 734 S.W.2d 794 (1987). However, it is my opinion that the time has come to put an end to comity. As we stated in *Reneer, supra:*

> The Supreme Court of this Commonwealth has the authority to prescribe rules of practice and procedure in the courts of this Commonwealth. Kentucky Constitution, Section 116. Because KRS 532.055 is a legislative attempt to invade the rule-making prerogative of the Supreme Court by legislatively prescribing rules of practice and procedure, it violates the separation of powers doctrine enunciated in Section 28 of the Kentucky Constitution.

*See also Ex Parte Auditor of Public Accounts*, Ky., 609 S.W.2d 682 (1980), at page 688.

In this Commonwealth, authority to designate the sentencing authority lies with the Supreme Court of Kentucky. As we stated in *Reneer*, Section 28 of the Constitution provides for separation of powers among the three branches of government. Section 109 provides that judicial power shall vest in the Supreme Court, and Section 116 empowers the Supreme Court to make all rules of practice and procedure.

In its history, Kentucky has operated under four separate constitutions, none of

which makes any reference to jury sentencing. Each of the four retains the right to "the ancient mode of trial by jury." This phrase was adopted in Section 7 of our present Constitution, as follows: "The ancient mode of trial by jury shall be held sacred and the right thereof remains inviolate, subject to such modifications as may be authorized by this Constitution."

This was explained as early as *Wilson v. Commonwealth*, 141 Ky. 341, 348, 132 S.W. 557 (1910), in which the court stated:

What is here guaranteed is the right to trial by jury according to the ancient mode; that is as was the right of trial by jury at the common law. At the common law the jury either returned special verdicts, setting forth the facts supporting the prosecution and prayed the judgment of the court thereon, or a general verdict of guilty. Thereupon the punishment was fixed by the court and enforced by ministerial officers charged by the law with that duty. Citing 4th Blackstone Commentaries, page 361.

This question of comity has indeed been recognized by the General Assembly of Kentucky itself. When the Rules of Criminal Procedure were adopted in 1962, the legislature recognized that the previous statutory rules had "... governed general criminal proceedings only as a matter of comity on the part of the courts ..." It further declared that the policy of the legislature was "... that prescription of rules governing details of procedure will be left to the discretion of the Judicial Department after the effective date of this Act ..." *Acts*, 1962 C. 234, Preamble and § 61(2). The previous rule regarding the authority to sentence was not re-enacted, but became a Rule of the Supreme Court—i.e., Rule 9.84:

**Rule 9.84. Penalty.**—(1) When the jury returns a verdict of guilty it shall fix the degree of the offense and the penalty, except where the penalty is fixed by law, in which case it shall be fixed by the court.

(2) When the defendant enters a plea of guilty, the court may fix the penalty, except in cases involving offenses punishable by death.

Paragraph (2), above, calls to mind an interesting anomaly. Kentucky already has judicial sentencing under this section in all but about 10% of the cases in our judicial system. It is my impression that at the last count 9.85% of the cases in our criminal justice system were actually tried by jury.

The trend of modern criminal justice has been toward judicial sentencing. At present, only six states—viz., Arkansas, Kentucky, Missouri, Oklahoma, Texas and Virginia—have jury sentencing, with Missouri, Oklahoma and Texas allowing the defendant to choose between jury and judicial sentencing.

Judicial sentencing has been endorsed by the American Bar Association, the President's Crime Commission, the National Commission on Law Observance and Enforcement, the Model Sentencing Act (§ 12), and the Model Penal Code. The Circuit Judges Association of Kentucky has ardently endorsed judicial sentencing. These endorsements do not, per se, furnish grounds for a change of the rule, but are indicative of the thinking of the best minds which have studied the situation.

As indicated herein, we already have judicial sentencing in the vast majority of cases. Under KRS 532.050, which really should be adopted as a Rule of Procedure, no sentence may be imposed by a judge without considering a written report following a pre-sentence investigation, which report is made by a Probation Officer and includes "an analysis of the defendant's history of delinquency or criminality, physical and mental condition, family situation and background, economic status, education, occupation, personal habits and any other matters the court directs to be included." The defendant is advised of the contents of this investigation and report and given reasonable time and opportunity to controvert any facts and conclusions.

At the present time, with jury sentencing, this procedure is a tool for use in probation or conditional discharge. Under our present laws, which provide for a clum-

sy and time-consuming bifurcated trial, the jury is furnished with only a smattering of this information; but, in the main, the jury is conducting the sentencing phase of the trial in a dimly lit room.

I would immediately and prospectively change RCr 9.84 to provide that, when a jury returns a verdict of guilty which fixes the degree of the offense, the penalty shall be fixed by the court after the pre-sentence investigation and report, which also should be provided for by the Rules of this court.

STEPHENSON, J., joins in this concurring opinion.

LEIBSON, Justice, dissenting.

Respectfully, I dissent.

This is Chapter II in the continuing saga of sentencing problems generated by the so-called "Truth–In–Sentencing Statute," codified in KRS 532.055 and 439.3401.

In Chapter I, *Commonwealth v. Reneer,* Ky., 734 S.W.2d 794 (1987), the only issue considered was "whether or not KRS 532.-055 (The Truth in Sentencing Statute) violates Section 28 of the Kentucky Constitution relating to the separation of powers among the separate departments of state government." *Id.,* at 795. We held that "it violates the separation of powers doctrine." *Id.,* at 796. Nevertheless, we refuse to "nullify" the statute, stating that we would recognize it for the time being on the basis of "comity," subject to further review of problems with individual parts of the statute's general procedural structure.

> "We reserve the right to consider any abuses or injustices ... and we accept its provisions for the time being under the principle of comity." *Id.,* at 798.

The time has come to confront some very bad problems emerging from applying certain sections of the Act, specifically: (1) the proviso permitting the Commonwealth to offer evidence of "minimum parole eligibility (KRS 532.055(2)(a)(1)," and (2) a multitude of constitutional problems at the sentencing phase generated by the statutory language in the section dealing with parole for violent offenders (KRS 439.3401).

In each instance we have met the problem and we have muffed it.

## I. MINIMUM PAROLE ELIGIBILITY

Parole is not a judicial function but an executive function. It is administered by the Parole Board, an autonomous body appointed as directed in KRS 439.320. Parole is nothing more than post-conviction clemency, a matter of grace. The Parole Board has promulgated various administrative regulations establishing rules and a schedule for parole eligibility, but the Parole Board is free to revise these rules and schedule at any time, and, further, to "review the case of any inmate for parole consideration prior to his eligibility date if it appears advisable to do so." Kentucky Parole Board Reg. DC–RG6(8). As stated in the Commentary to KRS 532.060, Sentence of Imprisonment for felony, "The actual length of his imprisonment is to be determined by the parole board."

Indeed, new rules for "determining parole eligibility" were enacted by "emergency regulation" effective September 12, 1988 (501 KAR 1:030E), subject to a public hearing scheduled for October 21, 1988, and thus the rules regarding parole eligibility applicable to this appellant may already be changed.

This is the kind of uncertain information that our Majority Opinion stamps with approval as admissible evidence.

As stated in my Dissenting Opinion in *Commonwealth v. Reneer, supra* at 800, anticipating this problem:

> "What will the Commonwealth tell the jury about minimum parole eligibility? .... [T]he power to determine the period of incarceration passes completely to the Parole Board.... '[W]e [have] in Kentucky an indeterminate sentence with a maximum term that [is] fixed by the jury and no minimum term.' Commentary to KRS 532.060.
>
> There is no way to comprehensibly convey to the jury all of the conflicting possibilities that surround parole eligibility.... The prospect of confusion and 'half-truths' is inevitable."

There are two prongs to the attack on permitting the prosecution to introduce evidence about "minimum parole eligibility," both valid. One is that it is bad judicial policy making and the second is that it is unconstitutional.

The sentencing procedure, including the decision whether to permit evidence about "minimum parole eligibility," is a matter of judicial policy because procedure has been constitutionally allocated to the judicial branch of the government. In *Reneer* we made a decision to adopt certain procedures as a general concept because the General Assembly has recommended them, subject to subsequent review of individual rules for "abuses or injustices." Now we have been confronted with clear abuse and injustice, and nevertheless embrace the General Assembly's recommendation to permit evidence about parole. We have done so in conflict with longstanding, well reasoned judicial precedent mandating a contrary result. For instance, in *Broyles v. Commonwealth*, Ky., 267 S.W.2d 73, 76 (1954), we explained why parole eligibility should not be considered in sentencing thusly:

> "[W]hen the judiciary attempts to anticipate the rules of the legislative and executive departments relating to the parole of prisoners, and attempts, in effect, to circumvent those rules it infringes upon the prerogatives of other departments of government."

The long line of cases condemning discussion of parole eligibility includes *Farmer v. Commonwealth*, Ky., 450 S.W.2d 494 (1970); *Abernathy v. Commonwealth*, Ky., 439 S.W.2d 949 (1969); *Brown v. Commonwealth*, Ky., 445 S.W.2d 845 (1969), and *Ringo v. Commonwealth*, Ky., 346 S.W.2d 21 (1961). In *Postell v. Commonwealth*, 174 Ky. 272, 192 S.W. 39, 44 (1917), we stated the fundamental principle as follows:

> "[T]he jury's verdict [on sentencing] should not be influenced by what another department of the state government might or might not do, or had authority

to do. It is to be guided only by the facts pertaining to the guilt or innocence of the accused, and the law applicable thereto."

Before enactment of the Truth–In–Sentencing statute, the character of the crime was the *only* consideration for the jury in fixing the sentence for the offense.[1] After enactment of the Truth–In–Sentencing statute, the character of the criminal has been added to the character of the offense as a consideration in setting the sentence for the offense. It allows proof of his character in those specifics itemized by the statute. Even if we assume that this profound change should occur, that the character of the criminal as well as the character of the offense should be considered in sentencing, future parole eligibility still does not fit into the pattern.

Constitutional limitations on the government's exercise of arbitrary power and the constitutional guarantee of due process should prohibit using evidence in sentencing that is inherently misleading, confusing or incomplete. Ky. Const., Sec. 2. It is one thing for the Truth–In–Sentencing statute to permit, and for us to condone by comity, jury consideration of past criminal history in setting the sentence for the offense being tried. However, it is quite a different matter to factor in speculation on future parole eligibility, a matter which is inherently vague and unknowable, and subject to subsequent change. Statutes or criminal rules permitting such evidence necessarily transgress constitutional limitations on arbitrariness.

The case against the majority position is fully made by the Tennessee Supreme Court. Not too long ago it struck down a similar law requiring trial court judges in criminal cases to inform the jury about parole in *Farris v. State*, 535 S.W.2d 608, 614 (Tenn.1976), in these words:

> "Jurors should not be permitted to speculate on the length of sentences, discretionary parole, the accumulation of good and honor time and a whole conglomeratus.

---

**1.** It was, of course, subject to subsequent enhancement upon proof of persistent felony sta-

**112**

tion of contingent events which, if they come to pass at all, will come to pass in the future. Very heavily involved is the constitutional right of a defendant to a fair trial.

This is trial 'by guess and by golly', and we will not countenance it by upholding a statute which offends every sense of fairness and every precept of due process.

....

The matter of the future disposition of a convicted defendant is wholly and utterly foreign to his guilt and is not a proper consideration by a jury in determining the length of his sentence."

Against this array of our own judicial precedents and powerful reasons why this Court should not permit evidence of minimum parole eligibility, the Majority Opinion offers nothing more than language from a United States Supreme Court case, badly misapplied, because an entirely different issue was involved. The Majority Opinion cites *California v. Ramos*, 463 U.S. 992, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983). *California v. Ramos* involved instructions to a jury in a capital case where one of the possible sentences was life without possibility of parole. Obviously, a jury required to choose between the death penalty and a sentence to life without possibility of parole or a sentence where parole is possible, is necessarily told that parole is a prospect. This is so inapposite to our present Opinion allowing the Commonwealth to produce vague, uncertain and incomplete evidence about existing minimum parole guidelines that further comment is a waste of space.

## II. KRS 439.3401, PAROLE FOR VIOLENT OFFENDERS

The Majority Opinion is wide of the mark when it states the "entire attack on KRS 439.3401 is predicated on the *possible* disparity (between a life sentence and a term of years) in sentencing which may exist in the minimum for parole eligibility." [Em-

phasis original.] Disparate sentencing is the *least* of appellant's stated objections and probably the least significant of the constitutional considerations involved.

The potential for constitutionally impermissible disparity occurs because a life sentence may, depending on future unknowable considerations, result in a shorter term of incarceration than a sentence to a term of years. But the primary and insurmountable constitutional problem occurs when this section of the Truth–In–Sentencing Act is juxtaposed with the section we have just discussed, KRS 532.055(2)(a)(1), permitting the Commonwealth to introduce evidence regarding minimum parole eligibility.

Taken together, these two provisions present an insolvable dilemma for defense counsel in a criminal case amply illustrated by present circumstances. The appellant's counsel cannot argue sentencing in the best interest of his client. This presents a constitutionally impermissible encroachment on the accused's "right to be *heard* by ... counsel," [emphasis added] as guaranteed by the Kentucky Constitution Section 11, and the Sixth Amendment right to the assistance of counsel in the United States Constitution. The Kentucky constitutional protection is stronger because this is not just a right to be represented, but a right to be "heard."

The right to be *heard* necessarily carries with it the premise that counsel will be able to make a reasonable judgment and logical argument as to what is in his client's best interest. The terms of KRS 439.3401, assuming their meaning can be understood, apparently require that a violent offender as defined in KRS 439.3401(1), including a murderer, shall not be considered for parole until he has served at least twelve years in the penitentiary if sentenced to life imprisonment, and shall not be considered for parole until he has served at least fifty percent of the sentence imposed if he has been sentenced to a term of years.[2]

**2.** To make any sense of the statutory language in KRS 439.3401(3) it is necessary to construe murder as a Class A offense, although it is elsewhere defined in KRS 507.020 as "a capital offense" and *not* a Class A felony.

Excluding the prospect of parole, the statutory sentencing structure which is set out in KRS Chapter 532, styled *Classification and Designation of Offenses–Authorized Disposition,* contemplates that life imprisonment is the maximum punishment that the sentencing authority can order in any case where the death penalty is not imposed. Indeed, the statutory language specifically involved states the authorized sentence "is not less than twenty (20) years nor more than life imprisonment," KRS 532.060(2)(a), and the jury is so instructed. As the Majority Opinion suggests, except for the confusing evidence that will be introduced regarding parole eligibility, a "layman considers ['a life sentence'] a longer sentence." Indeed, except for the uncertain and unknowable answers to the questions, "will the Parole Board release the prisoner on the first hearing; how many times will he be deferred; will the Parole Board require him to serve out his time?" a life sentence will be in fact as well as in theory the longer sentence.

Attached as an Appendix to this Opinion are Parole Board statistics styled "Results of First-time Hearings Only," 1983–87. The number paroled at first hearing has dropped by over 25%. The number committed to "serve out" has more than doubled. Who knows what the future will bring?

The point of all this is that it is impossible for defense counsel to make a rational argument to the sentencing authority, jury or judge, in his client's best interest, because he cannot divine the future actions of the Parole Board in his client's case. The defense attorney will be sorely tempted to ask for a life sentence since presumably he then has a possibility of parole in twelve years, but he must also consider that the Parole Board may well refuse to parole his client at the first time hearing (the last available statistics show the rejection rate at first time hearing almost 70%), and the possibility that his client may have to serve

out the life sentence to the end cannot be disregarded.

On the other hand, if he assumes the defendant will be paroled at the point of his minimum parole eligibility, this would mean twelve years for a life sentence, and any sentence to a term of years greater than twenty-four years is more severe than a life sentence because KRS 439.3401 fixes statutory minimum parole eligibility for a term of years at fifty percent.

The appellant in the present case, faced with the prospect of trial and conviction for a violent shotgun killing, had no meaningful argument for a minimum sentence of twenty years in the event of conviction even though, arguably, there may have been some mitigating circumstances relating to the defendant's diminished capacity. Logic foreclosed attempting to argue for the minimum sentence or for a sentence from twenty to twenty-four years. Faced with this prospect and deprived by the statute of any meaningful opportunity to argue sentencing, he opted for a negotiated plea, reserving the right to challenge on appeal the constitutionality of the sentencing scheme which denied him a sentencing argument.

KRS 439.3401, as structured, providing minimum parole eligibility of twelve years for life sentence but fifty percent for a term of years, is arbitrary and denies due process as guaranteed by our Kentucky Constitution, Section 2. This much should be obvious to an elementary sense of justice. However, even were I able to understand how or why my colleagues can accept this statute as reasonable, surely it surpasses understanding to disclaim the accused's constitutional guarantees, federal and state, to the assistance of counsel and to the right to be heard by counsel. There is no way that counsel can figure out how to argue in his client's best interest for a reasonable sentence to a jury that will be burdened with a bundle of half-truths about minimum parole eligibility. He is

---

Next, it is necessary to make substantial changes in the punctuation in KRS 439.3401(2) to avoid having every conviction of a "capital offense," regardless of sentence, subject to a minimum parole eligibility of twelve years.

By regulations the Parole Board has rewritten the statute to effect these changes. I can only speculate that the Majority Opinion approves the Parole Board's version of the statute *sub silentio.*

forced, as was this defendant, to give up his right to contest guilt in exchange for the promise of a minimum sentence.

No doubt inspired at least in part by the outrageous confusion thrust upon the sentencing procedure by the Truth–In–Sentencing statute, Justice Gant has filed a Concurring Opinion proposing a change to judge sentencing from our time honored system of jury sentencing. The problems created by *Reneer* are of our own making and should not be used as a vehicle to abandon the people's right to decide by verdict what is an appropriate sentence. A proper sentence is a question of fact and not just a matter of procedure.

It is out of character with the deliberative process for our Court to assume power to trade in jury sentencing for judge sentencing until first the issue has been properly presented and carefully considered. This should include preliminary research and review of the legal issues and an opportunity afforded to the public and to the bar association to participate in the process.

Until this matter has been thoroughly researched and considered, it is both precipitous and presumptuous to suggest that our Constitution does not guarantee the right to a jury's verdict regarding an appropriate sentence in those cases where the defendant pleads not guilty, or to decide that the new Judicial Article meant to disturb anything so fundamental as the people's right to jury sentencing simply because Article 116 now specifies that "[t]he Supreme Court shall have the power to prescribe ... rules of practice and procedure for the Court of Justice." I would seriously question that the people of Kentucky, or the General Assembly, would view it as reasonable for us to presume the power to abolish jury sentencing from the authority to prescribe "rules of practice and procedure for the court of justice."

I am not familiar with how well jury sentencing works in our sister states. But I am prepared to state, quite confidently, that sentencing problems in Federal courts using judge sentencing procedures instead of jury sentencing are as great, or greater, than problems with jury sentencing in Kentucky. A distinguished Federal Judge, The Honorable Marvin E. Frankel, in his book "Criminal Sentences, Law Without Order," expounded in detail on the serious problems in judge sentencing in Federal courts. Judge Frankel's conclusion about judge sentencing is as follows:

> "[T]he point is made, in all its stark horror, by the compelling evidence, that widely unequal sentences are imposed every day in great numbers for crimes and criminals not essentially distinguishable from each other." [Frankel, p. 8.]

Judge Frankel documents his treatise with example after example. He concludes:

> "The evidences is conclusive that judges of widely varying attitutes on sentencing, administering statutes that confer huge measures of discretion, mete out widely divergent sentences where the divergences are explainable only by the variations among the judges, not by material differences in the defendants or their crimes." [Frankel, p. 21.]

What more proof of the failure in the Federal sentencing system is needed than the drastic changes recently enacted by Congress in the Comprehensive Crime Control Act of 1984. An elaborate new system of sentencing guidelines and supervisory procedures has been enacted to control the sentencing discretion of trial judges, much of which now is being challenged in Federal courts as unconstitutional.[3]

---

3. From Vol. 19, No. 20, *Criminal Justice Newsletter*, October 17, 1988: "Up to now, the Constitutional issue has led to widely differing results in federal courts. Of 560 federal district judges sitting, 143 have ruled that the 1984 sentencing reform law was unconstitutional, while 108 have upheld it. The law, reflecting Congress' desire that federal criminal sentences be made more certain and definite and that judges' dis-

cretion thus be limited, set up the Sentencing Commission to draft the guidelines. They went into effect last November 1." A case involving the constitutionality of the new criminal sentencing guidelines and of the special Commission that wrote them was heard on oral argument before the United States Supreme Court on October 5, 1988.

The argument that judges are better prepared than juries to decide on a proper sentence is undocumented, and probably untrue. The question of what is an appropriate sentence is a question of fact, and the time honored method for deciding facts in a court of law by jury is a powerful protection of our liberty.

My views on this matter may be found in an article in the Louisville Bar Association publication, Louisville Lawyer, Winter 1982. I quote a portion of that article:
"Disinterested citizens, forced to submit their arguments for or against a proposition to the inquiring scrutiny of their fellow jurors, are more likely to 'get it right' on any question of fact, including the punishment that fits the crime, than a judge."

The jury selection process insures that the jurors have no stake in the outcome of the case. The law requires that they must be impartial, and those of us with long experience in the judicial process almost without exception develop great respect for jury impartiality.

Judges on the other hand have a stake in the system. It is their profession and their livelihood. They must run for reelection. In view of current political wisdom about the importance to the candidate of being viewed as a "law and order" candidate, a defendant would have every right to fear the worst at the prospect of facing judge sentencing in an election year. As long as we elect judges in Kentucky, I will oppose substituting judge sentencing for jury sentencing. Can we honestly expect of a judge that he will be able to view the prospect of sentencing with the same objectivity and detachment, fairness and impartiality, that we can expect of a jury for whom the outcome of the case has no personal consequences?

Justice Gant's Concurring Opinion makes the point that "Kentucky already has judicial sentencing in all but about 10% of the cases in our judicial system." This state-ment leaves a wrong impression because the defendant waives the right to a jury verdict on sentencing *only* when he pleads guilty. Almost without exception these cases where a plea of guilty is entered are plea bargained. This means there is an agreed sentence beforehand recommended by the Commonwealth at the time the plea is entered. Any judge who is fair, if he decides he will not abide by the plea bargain, will permit the defendant to withdraw the plea of guilty and retain the right to contest his guilt and to jury sentencing.

The change to judge sentencing for Kentucky will be no small matter. On the contrary, it will take away from the people the power to make a fundamental and important decision, and transfer that power into the hands of governmental officials, the elected judiciary. In my judgment, such a change should not be casually undertaken. Indeed, it should not be undertaken at all until first it has been established by credible evidence that it is a change for the better and then it has been established that the people of Kentucky want this change.

There is much about our present sentencing and parole structure, as mandated by our statutes, that needs reform to restore credibility to the sentencing process. We need to study the feasibility of a system of determinate sentencing, setting fair and reasonable sentences in the first place and abandoning a parole system which often serves only to control the size of the prison population. But there is no reason to believe that abolishing the jury verdict as to the appropriate sentence will improve the system, and every reason to fear that it may make our situation worse.

LAMBERT, J., concurs in this Dissenting Opinion, except that portion which discusses whether judicial or jury sentencing is preferable.

### APPENDIX A
### ALL INSTITUTIONS—COMBINED STATISTICS
(Excluding Parole Violation Hearings and Early Parole Hearings)
Results of First-time Hearings Only
1983–1987