RENDERED: AUGUST 22, 2024
TO BE PUBLISHED

# Supreme Court of Kentucky

2023-SC-0194-DG

DARRIE RUSHIN          APPELLANT

V.

ON REVIEW FROM COURT OF APPEALS
NO. 2022-CA-0178
JEFFERSON CIRCUIT COURT NO. 13-CR-000042

COMMONWEALTH OF KENTUCKY          APPELLEE

**OPINION OF THE COURT BY JUSTICE THOMPSON**

**<u>REVERSING</u>**

We granted discretionary review to determine whether inmates, who have been reincarcerated for violating the terms of their postincarceration supervision (to which they had been sentenced in accord with Kentucky Revised Statutes (KRS) 532.043), may earn statutory sentence credits under KRS 197.045 during the period of their reincarceration for application toward the remainder of their in-custody sentences.

As a matter of first impression, we hold sentence credits apply to reduce the period of reincarceration inmates are serving due to a violation of their postincarceration supervision and therefore reverse the opinion of the Court of Appeals.

## I. FACTUAL AND LEGAL BACKGROUND

Darrie Rushin was indicted by a Jefferson County grand jury on charges

of first-degree burglary; first-degree sodomy; first-degree attempted rape; first-degree unlawful imprisonment; public intoxication; and being a first-degree persistent felony offender (PFO I). He pled guilty to amended charges of second-degree burglary and second-degree sodomy in addition to the original charges of first-degree attempted rape, first-degree unlawful imprisonment, and public intoxication. Pursuant to the plea agreement, the PFO I charge was dismissed.

On April 2, 2014, the trial court accepted Rushin's guilty plea and imposed a total sentence of seven years' imprisonment in accordance with the Commonwealth's recommendation. Additionally, the trial court sentenced Rushin to register as a sex offender and,

> [p]ursuant to KRS 532.043, . . . to *a five-year period of post incarceration supervision* after expiration of his sentence or completion of parole, to be supervised by Probation and Parole under the authority of the Parole Board. Any violation shall be reported by Probation and Parole to the Parole Board, which may act to reincarcerate the Defendant pursuant to KRS 532.043 and KRS 532.060.

While incarcerated, Rushin completed his sex offender treatment program (SOTP) and was then entitled to apply his earned credits toward release. On December 19, 2018, the remainder of Rushin's seven-year sentence was discharged and he was released to begin the five-year period of postincarceration supervision.

After Rushin violated the terms of his supervision by absconding, he was reincarcerated on January 2, 2020, to complete the remainder of the postincarceration supervision period in prison.

2

In May 2021, Rushin requested the Department of Corrections (DOC) to review his sentence calculation arguing he had been wrongfully denied sentence credit that would reduce the length of his reincarceration. The DOC denied Rushin's request, and his subsequent administrative appeal was also denied. Rushin thereafter filed a motion in his underlying criminal case seeking declaratory and injunctive relief.[1] DOC moved to dismiss the claim on separation-of-powers grounds, arguing the trial court lacked authority to review DOC's actions in connection with Rushin's supervision. In a summary order, the trial court dismissed the claim. On direct appeal, the Court of Appeals concluded the trial court improperly dismissed the petition, but nonetheless affirmed on other grounds, holding Rushin was not entitled to relief as a matter of law.[2] We granted discretionary review.

As an initial matter, we must determine whether to dismiss this appeal as moot. From the record, it appears Rushin was scheduled to be released from prison on December 26, 2023. Kentucky caselaw defines "[a] 'moot case' [as] one which seeks to get a judgment . . . upon some matter which, when rendered, for any reason, cannot have any practical legal effect upon a *then*

---

[1] As the Court of Appeals noted, an inmate's challenge to sentence calculation and custody credits is usually accomplished via a separate civil action. *Smith v. O'Dea*, 939 S.W.2d 353, 355 (Ky. App. 1997); KRS 454.415. However, because the DOC participated at all stages of the current dispute without raising any procedural or jurisdictional arguments beyond its separation-of-powers argument, and because we perceive the courts below to have properly exercised subject-matter jurisdiction, we agree with the Court of Appeals that review on the merits is appropriate.

[2] The DOC has not pursued its separation-of-powers argument in its brief before this Court. Therefore, we consider the issue to be abandoned. *See Middleton v. Commonwealth*, 198 Ky. 625, 249 S.W. 777 (1923).

existing controversy." *Morgan v. Getter*, 441 S.W.3d 94, 98-99 (Ky. 2014)

(quoting *Benton v. Clay*, 192 Ky. 497, 233 S.W. 1041, 1042 (1921)). Challenges

to the terms of probation, parole, or supervised release are generally moot once

the underlying sentence has expired. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998).

However, the mootness doctrine is not without exceptions, and we have

previously determined an otherwise moot challenge to the constitutionality of

the post-incarceration supervision statute was justiciable as being "capable of

repetition, yet evading review." *Jones v. Commonwealth*, 319 S.W.3d 295, 296-

97 (Ky. 2010). We also observed "the short duration of [post-incarceration

supervision] and the length of time required to fully litigate the issue" satisfied

the elements of the "capable of repetition, yet evading review" exception to the

mootness doctrine. *Id.* We agree with the reasoning of *Jones* in this instance;

this appeal is not moot. We now address to the merits of Rushin's appeal.[3]

## II.  ANALYSIS

Rushin argues he was entitled to earn credits under KRS 197.145 during

the period of his reincarceration. He contends the Court of Appeals

misinterpreted the applicable statutes by disregarding, as mere dicta, this

Court's statement in *McDaniel v. Commonwealth*, 495 S.W.3d 115, 119 n.3 (Ky.

2016), which noted the initial term of imprisonment and the subsequent period

of postincarceration supervision are two parts of a single sentence.

---

[3] Rushin also argued his appeal is justiciable under the public interest exception. However, as we have determined the exercise of jurisdiction is proper under the "capable of repetition, yet evading review" exception, we need not address this argument.

The legislature possesses the sole authority to "make[] the laws, deciding what is a crime and the amount of punishment to impose for violations thereof." *Jones*, 319 S.W.3d at 299. Similarly, "credit against a prisoner's sentence is a matter of statute." *Kentucky Dept. of Corrections v. Dixon*, 572 S.W.3d 46, 49 (Ky. 2019). Thus, "[s]tatutory construction principles are front and center in this case[.]" *Id.*

It is axiomatic that "[o]ur goal in statutory interpretation is to carry out the intent of the legislature." *Bloyer v. Commonwealth*, 647 S.W.3d 219, 224 (Ky. 2022). *See also* KRS 446.080(1). To this end, we must construe "each statute to give effect to its plain meaning and unambiguous intent without rendering any part meaningless." *A.H. v. Louisville Metro Gov't.*, 612 S.W.3d 902, 908 (Ky. 2020). Resort to the canons of construction or other extrinsic evidence of the legislature's intent is appropriate "[o]nly if the statute is ambiguous or otherwise frustrates a plain reading[.]" *Shawnee Telecom Resources, Inc. v. Brown*, 354 S.W.3d 542, 551 (Ky. 2011). Further, "[w]e presume the General Assembly intended neither an absurd nor an unconstitutional statute." *A.H.*, 612 S.W.3d at 908.

Because questions of statutory interpretation are purely matters of law, our standard of review is *de novo. Id.*

## A. Sentences Which Include Periods of Postincarceration Supervision

Postincarceration supervision is a novel statutory creation that does not fit perfectly within the traditional categories of probation and parole as they relate to the underlying judgment of conviction and sentence. *McDaniel*, 495

5

S.W.3d at 120. When KRS 532.045 was originally enacted, it referred to postincarceration supervision as "conditional discharge" which operated as "a sort of probation/parole hybrid." *McDaniel*, 495 S.W.3d at 120. We explained further, "[l]ike parole, the defendant's discharge came after judicial proceedings had ceased and jurisdiction expired, and the conditions of discharge were specified by the Department of Corrections. *Id.*

As with probation revocation proceedings, conditional discharge proceedings were assigned to prosecutors and the courts. KRS 532.043(5). *Id.* However, this hybrid approach was untenable and in *Jones*, 319 S.W.3d at 295, we held the prior version of KRS 532.043(5) was unconstitutional because it violated the separation of powers doctrine. Particularly, the *Jones* Court determined conditional discharge (now postincarceration supervision) was "akin to parole or an extension of parole." 319 S.W.3d at 298. Thus, the commitment of parole-like revocation proceedings to the judiciary improperly encroached upon the sphere of executive authority. *Id.* at 299. Nevertheless, we opined the legislature could, "consistent with the separation of powers doctrine, create a form of conditional release with terms and supervision by the executive branch." *Id.*

In response to *Jones*, "the General Assembly . . . changed the name from 'conditional discharge' to 'postincarceration supervision,' and amended subsection 5 of KRS 532.043 to provide for Parole Board, rather than judicial,

oversight of revocations."[4] *McDaniel*, 495 S.W.3d at 120.

As currently enacted, KRS 532.043 mandates a five-year period of postincarceration supervision for various sexual offenses "[i]n addition to the penalties authorized by law[.]" Postincarceration supervision commences after the offender has been released from imprisonment through the expiration of sentence or has completed parole. KRS 532.043(1)(a)-(b).

In turn, KRS 532.043(4) authorizes the Division of Probation and Parole to supervise those offenders during their period of postincarceration supervision. Should an offender violate the terms of postincarceration supervision, KRS 532.043(5) requires the Division of Probation and Parole to report the violation in writing and to provide notice of the violation to the Parole Board who, in turn, must "determine whether probable cause exists to revoke the defendant's postincarceration supervision and *reincarcerate* the defendant as set forth in KRS 532.060." (Emphasis added).

KRS 532.060(3) defines the relationship between a convicted felon's "initial sentence," postincarceration supervision, and reincarceration, and sets forth the consequences for the revocation of supervision:

> For any felony specified in KRS Chapter 510, KRS 530.020, 530.064(1)(a), or 531.310, *the sentence shall include* an additional five (5) year period of postincarceration supervision which shall be added to the maximum sentence rendered for the offense. During this period of postincarceration supervision, if a defendant violates the provisions of postincarceration supervision, the defendant may be *reincarcerated* for:

---

[4] 2011 Kentucky Laws Ch. 2 (HB 463) § 91 (effective March 3, 2011).

(a) The remaining period of his *initial sentence,* if any is remaining; and

(b) The entire period of postincarceration supervision, or if the *initial sentence* has been served, for the remaining period of postincarceration supervision.

(Emphases added).

Therefore, while KRS 532.043(1) describes postincarceration supervision as being imposed upon a defendant "in addition" to other "penalties authorized by law[,]" KRS 532.060(3) goes on to contemplate a *single* sentence which is made up of both an "initial sentence" and a period of postincarceration supervision which may result in reincarceration. Thus, the word "sentence" cannot be interpreted in isolation and must be applied in the context of the statutory scheme as a whole. *See Lewis v. Jackson Energy Co-op. Corp.,* 189 S.W.3d 87, 92 (Ky. 2005).

When read together, these statutes evince the legislature's intent that a sentence imposed for certain sexual offenses is to be composed of two discrete, but interrelated, parts: an initial term of imprisonment which is to be followed by a mandatory five-year period of postincarceration supervision (by the Division of Probation and Parole) which, if violated, can result in reincarceration.

This Court has recognized as much in the context of double jeopardy noting,

[postincarceration supervision], of course, although an addition to the term-of-years sentence either bargained for (as in these cases) or imposed by the jury, is ***not*** a "second" punishment imposed in the course of a "second" jeopardy, as disallowed by the Double

8

Jeopardy Clause, but is merely a portion of a single sentence imposed in the course of the original jeopardy.

*McDaniel*, 495 S.W.3d at 119 n.3 (emphasis added).

The Court of Appeals reasoned this was dicta within the full context of the opinion. We have determined it to be a considered and correct statement of the law. *See Cawood v. Hensley*, 247 S.W.2d 27, 29 (Ky. 1952).

Moreover, the reasoning of *McDaniel* is supported by the interpretation of KRS 532.043 in *Jones*, which perceived postincarceration supervision to be parole-like in nature. 319 S.W.3d at 299. We are convinced the interpretations of KRS 532.043 in *McDaniel* and *Jones* are sound, apply their reasoning to the present appeal, and determine that the period of time Rushin was reincarcerated for violating the terms of his postincarceration supervision was a part of his original "sentence."

**B. Statutory Credits**

Having determined Rushin's initial term of imprisonment and the period of his postincarceration are two parts of a single sentence, we turn to whether he is entitled to credits under KRS 197.045 during any period of reincarceration served for violations occurring during his postincarceration supervision period. We hold that statutory sentence credits apply to this situation.

The primary issue here is whether the General Assembly, without specifically stating, decided to exclude a certain class of inmates from the ability to earn any credits towards the remainder of their sentence. The DOC's

9

position is that inmates who find themselves back in prison for violating terms of their postincarceration supervision (for which they were sentenced pursuant to KRS 532.042) cannot earn any credits under KRS 197.045.

KRS 197.045 states in full:

(1) Any person *convicted and sentenced to a state penal institution:*

  (a) *Shall* receive a credit on his or her sentence for:

   1. Prior confinement as specified in KRS 532.120;

   2. Successfully receiving a High School Equivalency Diploma or a high school diploma, a college degree, a completed vocational or technical education program, or a correspondence postsecondary education program which results in a diploma or degree, as provided, defined, and approved by the department in the amount of ninety (90) days per diploma, degree, or technical education program completed;

   3. Successfully completing a drug treatment program, evidence-based program, or any other promising practice or life skills program approved by the department, in the amount of not more than ninety (90) days for each program completed. The department shall determine criteria to establish whether a life skills or promising practice program is eligible for sentence credits. Programs shall demonstrate learning of skills necessary for reintegration into the community to minimize barriers to successful reentry. Approval of programs shall be subject to review by the cabinet; and

  (b) *May* receive a credit on his or her sentence for:

   1. Good behavior in an amount not exceeding ten (10) days for each month served, to be determined by the department from the conduct of the prisoner;

2. Performing exceptionally meritorious service or performing duties of outstanding importance in connection with institutional operations and programs, awarded at the discretion of the commissioner in an amount not to exceed seven (7) days per month; and

3. Acts of exceptional service during times of emergency, awarded at the discretion of the commissioner in an amount not to exceed seven (7) days per month.

(Emphasis added).

The DOC's position makes no distinction between the types of credits discussed in KRS 197.045 and therefore must be read to prohibit a reincarcerated inmate like Rushin from acquiring *any* credits in *any* category.

Credits under KRS 197.045 fall under two umbrellas: (1) mandatory credits which an inmate "*shall receive*" under (1)(a)1-3 for completion of various educational programs, various life skills, "promising practice" and drug programs; and (2) discretionary credits an inmate "*may receive*" under (1)(b)1-3 for good behavior, meritorious service in connection with institutional operations and programs, or exceptional service during times of emergency.

We should note the mandatory language of "*shall receive a credit*" explicitly demonstrates that our legislature determined that the executive branch (under which our DOC exists) would have no discretion whatsoever when it came to inmates (who have not been specifically excluded from KRS 197.045) earning credits for the varying educational programs in which they might participate while in the custody of our state prisons. The term "shall" does *not* mean "may" and is mandatory language. *Woods v. Commonwealth,*

11

305 S.W.2d 935 (Ky. 1957); *O'Bryan v. Massey-Ferguson*, 413 S.W.2d 891 (Ky. 1966).

Even under the second category of credits (those which the DOC "may" award to an inmate), while the term "may" implicates discretion being vested in the DOC, such does not mean that the DOC was granted *carte blanche* and would be permitted to withhold or take away credits in a manner that could be determined to be "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

Statutory construction principles are front and center in this case because credit against a prisoner's sentence is a matter of statute, not of any other inherent or constitutional right. "There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex,* 442 U.S. 1, 7 (1979); *see Huff v. Commonwealth*, 763 S.W.2d 106, 108 (Ky. 1988) (citations omitted). To that end, when faced with issues of statutory interpretation we "must interpret the statute according to the plain meaning of the act *and* in accordance with the legislative intent." *Commonwealth v. Plowman,* 86 S.W.3d 47, 49 (Ky. 2002) (emphasis added).

Our sentencing statutes, either singular or as a whole, do not segregate inmates who are serving an initial term in prison imposed by a trial court, from those inmates who are in prison as ordered by DOC for a violation of their postincarceration supervision (which was itself originally imposed by the trial court).

KRS 532.060(3) itself is explicitly clear that postincarceration supervision is not separate from but is included within "the sentence." Unless there is a clear statutory exception, every inmate while in the custody of the DOC, and who can only be there pursuant to a sentence, should be treated the same for purposes of KRS 197.045. Once Rushin violated the terms of his postincarceration supervision, and was reincarcerated, he, *like all other inmates,* should have been afforded the opportunity to earn credits towards the remainder of his prison sentence.

At the time of his original sentencing, Rushin's postincarceration supervision period as mandated by KRS 532.043 was ordered by the trial court to be served only after (hence the name) he had served his initial sentence and was no longer in the custody of (but remained under the supervision of) DOC. However, that original sentence also carried with it—and contemplated—the distinct *potentiality* of reincarceration if Rushin did not fully comply with the conditions of his supervised release as "supervised" by the Division of Probation and Parole, and if that occurred would be subject to reincarceration by the Probation and Parole Board (itself a division of the DOC).

The "idea" of granting of credits to inmates existed in our laws well before any consideration was given to singling out certain crimes for postincarceration supervision and potential reincarceration. KRS 197.045 was enacted in 1956. Initially, the statute only concerned credits for "good time," but it has evolved over the last almost seventy years to include the credits for the educational and behavioral courses as well as meritorious service we find in the statute today.

However, and most importantly, the language applying the statute to "[*a*]*ny person convicted and sentenced to a state penal institution . . .*" has remained constant throughout every amendment to the statute since.

Correspondingly, KRS 532.060 ("Sentence of imprisonment for felony; postincarceration supervision") was not passed into law until 1974, and KRS 532.043 which requires "postincarceration supervision for certain felonies" did not exist in any form until 1998. There can be no legal presumption that our legislature's failure to go back and amend a separate statute, KRS 197.045,—to explicitly *include* a new "class" of inmate created much later by KRS Chapter 532—meant that the legislature intentionally determined to *exclude* such inmates from the credits system.

Under the DOC's interpretation, inmates serving time in prison, not for a new crime but for violating the terms of their postincarceration supervision, cannot receive credits, while their fellow inmates who may be guilty of the most violent and heinous crimes, can enjoy the full benefit of the credit system being applied towards their sentences. This conclusion is illogical when the purposes of sentencing laws are examined. Our interpretation of the application of KRS 197.145 must incorporate a recognition of the clearly enunciated goals of our other criminal statutes and recognition of the fact that while credits are an obvious benefit to the inmate who wants to secure early release from confinement, they also serve the interests of the prisons which utilize the credits and programs to encourage the types of behaviors which offer a safer environment in the prisons for both the inmates and staff.

14

KRS 196.032 "Department's [of Corrections] objectives" states:

> The primary objectives of the department shall be to maintain public safety and hold offenders accountable while *reducing recidivism and criminal behavior and improving outcomes for offenders* under its supervision. The department shall create and implement policies and programs to achieve these objectives.

(Emphasis added).

The credit system found in KRS 197.145 is a key component in serving society as a whole as a means of reducing recidivism and criminal behavior. It was, and is, up to our legislature to enact sentence credit statutes allowing for an inmate's early release because such statutes serve the public-interest purposes of both rehabilitation and deterrence. *See Greenholtz,* 442 U.S. at 7-8; *Fowler v. Black,* 364 S.W.2d 164 (Ky. 1963) ("Since the benefit that a prisoner may receive under [KRS 197.045] is a matter of legislative grace, the General Assembly could impose such conditions as it deems best for society,").

Our interpretation of the discrete terminology found in KRS 197.145 should be guided by these clearly stated policy goals. To this end, there are no statutory, substantive, or fundamental differences between an inmate in prison under an "initial sentence" imposed by a judge and his cellmate who is there because the DOC ordered his reincarceration. Both are serving a sentence. Both inmates are confined and in the custody of the DOC to serve their sentences.

Additionally, our General Assembly has provided clear provisions when there is any modification of when such credit can be earned and if inmates are

15

excluded from acquiring credit, this is explicitly provided in statutory language. For example, KRS 439.3401(5) states: "A violent offender shall only be awarded credit on his or her sentence authorized by KRS 197.045(1)(a)1."[5] Another example is contained in KRS 197.045(4), which provides the requirement that sex offenders must complete SOTP before they are entitled to apply earned credits.

Since inmates like Rushin are not *excluded* from the credits system set forth in KRS 197.045, they must be included within its operation. Any other result is totally contrary to our legislature's overarching rehabilitative goals.

### III. CONCLUSION

The DOC's interpretation of KRS 532.043 and KRS 197.045 is contradicted by the express language of the statutes and is contrary to the overarching societal goals set forth in of our sentencing laws. Statutory sentence credits are not in place strictly to benefit inmates; this system serves the interests of the other prisoners, prison staff, and society.

When our legislature fails to explicitly exclude a class of inmates from the benefits of sentencing credits, KRS 197.045 should be read to achieve the broadest application. We are confident that if our interpretation is not in line with the General Assembly intent, it will amend our statutes to exclude this

---

[5] The statute was amended by 2024 Kentucky Laws Ch. 174 (HB 5) to replace a previous provision in KRS 439.3401(4) stating:

> A violent offender shall not be awarded any credit on his sentence authorized by KRS 197.045(1)(b)1. In no event shall a violent offender be given credit on his or her sentence if the credit reduces the term of imprisonment to less than eighty-five percent (85%) of the sentence.

subset of prisoners from earning either some or all types of credits. However, until that time, our principles of statutory construction do not merit excluding such inmates from earning any credits.

Accordingly, the decision of the Court of Appeals is reversed.

All sitting. VanMeter, C.J.; Conley and Keller, JJ., concur. Nickell, J., dissents by separate opinion in which Bisig and Lambert, JJ., join.

NICKELL, J., DISSENTING: Respectfully, I dissent. The General Assembly enjoys plenary authority to establish criminal penalties within constitutional bounds. *Jones v. Commonwealth*, 319 S.W.3d 295, 299 (Ky. 2010). As a corollary, there is no inherent right to early release prior to the expiration of a valid sentence. *See Stewart v. Commonwealth*, 153 S.W.3d 789, 793 (Ky. 2005). Such leniency is "but a matter of grace or gift to persons deemed eligible." *Id.* Moreover, the administration of laws pertaining to early release is a purely executive function subject to compliance with statutory requirements. *Simmons v. Commonwealth*, 232 S.W.3d 531, 535 (Ky. App. 2007); *see also Herndon v. Herndon*, 139 S.W.3d 822, 826 (Ky. 2004) ("[A]dministrative agencies have no inherent authority and may exercise only such authority as may be legislatively conferred."). Review of the applicable statutes convinces me the legislature did not intend the award of sentencing credits under KRS 197.045 to reduce the actual time served on a period of reincarceration following the revocation of postincarceration supervision.

I agree with the majority that reincarceration for the completion of postincarceration supervision under KRS 532.060(3)[6] is included as part of a single sentence, and that KRS 197.045 entitles "any person convicted and sentenced to a state penal institution" to receive various credits against his or her sentence. However, while related and together forming a general sentencing scheme, in my view, these two instances of incarceration are distinct and require differing legal analysis and treatment under the ordinary rules of statutory construction.

In a typical criminal case, the maximum sentence of imprisonment for a felony offense is indeterminate and governed by KRS 532.060(1) with reference to "the limits provided by subsection (2)[.]" These limits pertain to "the authorized maximum terms of imprisonment" for the four different classes of felony offense; e.g., "[f]or a Class A felony, not less than twenty (20) years nor more than fifty (50) years, or life imprisonment," and so on. KRS 532.060(2). While these sentencing ranges prescribe the maximum term of imprisonment, "[t]he actual time of release *within the maximum established by subsection (1),* or as modified pursuant to KRS 532.070, shall be determined under procedures established elsewhere by law."[7] KRS 532.060(5). (Emphasis added). Statutes pertaining to early release, including KRS 197.045, must

---

[6] I note KRS 532.060 has been amended effective July 15, 2024. 2024 H.B. 278 Sec. 10. However, these recent changes do not affect my analysis.

[7] Under this provision, the power to determine "[t]he actual length of . . . imprisonment" has been delegated to the parole board. 1974 Commentary to KRS 532.060. Similarly, the legislature committed "the minimum period of imprisonment" to the discretion of the department of corrections[.]" *Id.*

18

therefore be construed in light of this specific delegation of legislative authority.[8]  *Herndon,* 139 S.W.3d at 826; *see also Friedmann v. Jefferson Cnty. Bd. of Educ.,* 647 S.W.3d 181, 188 (Ky. 2022) ("When multiple statutes are at issue, they 'are considered to be in *pari materia* when they relate to the same matter with an apparent or actual conflict in some or all of their provisions.'").

When read together in context, it is evident that KRS 532.060(5) limits and conditions the application of KRS 197.045 to reduce the actual time served on a maximum indeterminate sentence of imprisonment as provided and defined by KRS 532.060(1).  To read KRS 197.045 in isolation would render the reference to "the maximum established in subsection (1)" contained in KRS 532.060(5) superfluous.  Similarly, such a reading fails to account for the omission of any reference to the actual time of release within the period of reincarceration following a revocation of postincarceration supervision.  *See Whitlock v. Rowland,* 453 S.W.3d 740, 743-44 (Ky. App. 2015) ("It is axiomatic 'that, where the language of a statute clearly restricts its meaning and confines its operation to a single thing or class, other things or persons of other classes not mentioned are thereby excluded. . . ."); *see also* 2A Sutherland Statutory Construction § 47:23 (7th ed.) (noting legislative intent may be "expressed by omission as well as by inclusion[.]").

Because the five-year period of postincarceration supervision is not subsumed *within a maximum* sentence range established by KRS 532.060(1),

---

[8] KRS 532.070 authorizes a trial court to reduce a felony sentence recommended by the jury and is inapplicable here.

19

but instead comprises an additional penalty thereto pursuant to KRS 532.043(1) and KRS 532.060(3), it is inappropriate to resort to other law, such as KRS 197.045, to modify the duration of supervision in the absence of an explicit statutory directive. A review of KRS 532.043 and KRS 532.060(3) unmistakably manifests the legislature's intent that postincarceration supervision be considered an additional, mandatory penalty beyond the maximum indeterminate sentence.

KRS 532.045(1) requires certain sexual offenders to complete postincarceration supervision "[i]n addition to the penalties authorized by law[.]" Likewise, KRS 532.060(3) provides, "the sentence shall include an additional five (5) year period of postincarceration supervision which shall be added to the maximum sentence rendered for the offense." Moreover, "[t]he period of supervision *shall* be five (5) years[,]" under KRS 532.043(1), without exception or allowance for the exercise of discretion, waiver, or plea bargaining. (Emphasis added).

Further, in considering the competing policies embodied in the postincarceration supervision statutes, this Court has previously observed, "the Commonwealth has a substantial interest in facilitating an offender's reintegration into society while ensuring public safety but also, when an offender willfully disobeys the supervision terms which function to safeguard the public, a substantial interest in ensuring that an offender is not allowed to remain free." *Jones v. Bailey*, 576 S.W.3d 128, 149 (Ky. 2019). To this end, the Parole Board is vested with authority "to revoke the defendant's

20

postincarceration supervision and reincarcerate the defendant as set forth in KRS 532.060." KRS 532.043(5).

Specifically, KRS 532.060(3) provides:

[I]f a defendant violates the provisions of postincarceration supervision, the defendant may be reincarcerated for:

(a) The remaining period of his initial sentence, if any is remaining; and

(b) The entire period of postincarceration supervision, or if the initial sentence has been served, for the remaining period of postincarceration supervision.

Undoubtedly, these provisions contemplate the possibility of reincarceration for the entirety of the five-year period of supervision.

As the United States Supreme Court has noted, "[t]he risk of recidivism posed by sex offenders is 'frightening and high.'" *Smith v. Doe*, 538 U.S. 84, 103 (2003) (quoting *McKune v. Lile*, 536 U.S. 24, 34 (2002)). The Kentucky General Assembly has chosen to impose the harsh penalty of reincarceration on these offenders as negative inducement for compliance with postincarceration supervision and continued good behavior.

In interpretating penal statutes, our task is simply to effectuate legislative intent without regard to the wisdom or efficacy of the public policy embodied therein. *Commonwealth v. Vanmeter*, 187 Ky. 807, 221 S.W. 211, 214 (1920). Here, Rushin received the proper amount of credit under KRS 197.045 in relation to the actual time of his release within the maximum sentence set forth in KRS 532.060(1) and I do not read the applicable statutes to allow for the further reduction of time served upon reincarceration following

21

the revocation of supervision. Therefore, I respectfully dissent and would affirm the decision of the Court of Appeals.

Bisig and Lambert, JJ., join.

COUNSEL FOR APPELLANT:

Aaron Reed Baker
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Robert Chaney
Kentucky Department of Corrections
Office of Legal Services