Steve STUMBO, Petitioner-Appellant,

v.

William SEABOLD, Superintendent, Luther Luckett Correctional Complex, LaGrange, Kentucky, Respondent-Appellee.

No. 82–5500.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 24, 1983.

Decided April 13, 1983.

R. Neal Walker (argued), Kevin Michael McNally, Frankfort, Ky., court appointed, for petitioner-appellant.

Steven L. Beshear, Atty. Gen. of Ky., Eileen Walsh, Joseph Johnson (argued), Frankfort, Ky., for respondent-appellee.

Before KEITH, MERRITT and KENNEDY, Circuit Judges.

MERRITT, Circuit Judge.

Petitioner appeals from the District Court's denial of his petition for habeas corpus relief under 28 U.S.C. § 2254. Petitioner was convicted in a Kentucky court of first degree murder, and given the minimum sentence of 20 years. He claims that he was denied due process of law under the fourteenth amendment by the Kentucky law allowing the victim's family to hire a private prosecutor to prosecute the case. Alternatively he alleges that even if the use of private prosecutors is not per se unconstitutional, the retained prosecutor in this case engaged in such gross misconduct that petitioner was denied a fair trial. The magistrate who originally heard this case recommended granting the writ on the ground of prosecutorial misconduct. The District Judge, however, denied the writ, finding that the prosecutor's conduct, although improper, was not egregious enough to deprive the defendant of a fundamentally fair trial.

■ We do not believe that Kentucky law, which allows a privately retained prosecutor to assist the public prosecutor in criminal cases, constitutes a per se violation of due process. Many states have such laws, although they are rarely used. Petitioner argues that the private prosecutor has a single-minded goal of obtaining a conviction because his only ethical obligation is to his client (the victim or his family) while the public prosecutor's duty is to seek "justice" on behalf of the state. Kentucky law, however, requires the public prosecutor to retain control over the conduct of the trial to ensure that the state's interests are protected. Absent some evidence that the private prosecutor has in fact ignored the interests of justice in favor of seeking a conviction, his assistance of the public prosecutor is not a per se constitutional violation.

■ On habeas corpus review, the standard to be applied to allegation of prosecutorial misconduct is whether the petitioner was deprived of a fundamentally fair trial. *Cook v. Bordenkircher,* 602 F.2d 117 (6th Cir.1979). Our careful review of the record convinces us that in the context of this case, where the evidence of guilt was weak, the private prosecutor's misconduct deprived the petitioner of a fair trial. We are concerned that a serious injustice may have occurred in this case, and we believe that there should be another trial, one in which the egregious acts of prosecutorial misconduct which occurred in the first trial are not present.

Every tribunal which has reviewed this case has agreed that prosecutor Burns' conduct was highly improper. The Kentucky Supreme Court's description of his misconduct clearly and concisely demonstrates the kind of tactics used by the prosecutor to obtain a conviction.

Instances of Mr. Burns' misconduct cited by Stumbo include: calling the victim "the dead boy" on ten separate occasions during trial; repeatedly shouting at witnesses; flourishing the murder weapon in the faces of the jury and the witnesses; snapping the revolver's trigger repeatedly while cross-examining appellant, calling appellant "Johnny Murder Boy"; calling the victim's death an execution; referring to the offense as "cold-blooded murder" several times; calling appellant's defense a "cock-and-bull story"; calling for a guilty verdict to prevent murder cases from being "stacked up" in Floyd County; stating to the jury during closing argument that appellant "committed the crime of murder, in our opinion"; asking questions of defense witnesses Mr. Burns knew would be denied and for which he knew no proof would be offered; and repeating questions previously ruled inadmissible. Appellant objected to each of the above instances.

*Stumbo v. Commonwealth* (file No. 80–SC–422–MR), Memorandum Opinion at 3.

We find especially egregious Mr. Burns' attempts to suggest to the jury through cross-examination and final argument, the existence of a conspiracy to murder between the defendant and his cousin, when there was absolutely no evidence to support such a theory. (Tr. 261–62, 380) Also highly improper were Mr. Burns' references to the defendant as "Johnny Murder Boy" (Tr. 379), and his statement to the jury that if they believed this "cock-and-bull story" murder cases would be "stacked up" in Floyd County. (Tr. 383)

Had the evidence of guilt been overwhelming in this case, prosecutorial misconduct might be considered harmless error. There was little evidence, however, to support the prosecution's theory of intentional homicide and a significant amount of evidence to support the defendant's claim of accidental shooting. The only evidence the State cited during oral argument to support the theory that the defendant intended to shoot the decedent was the testimony of one witness to the effect that defendant Stumbo walked up to the decedent and put the gun right up against his stomach, and then it went off. (Tr. 112) He was the only witness who actually saw the shooting occur. The testimony of the other two prosecution witnesses was ambiguous. Apparently they did not see exactly how the gun fired at the last minute and only heard the shot. All the witnesses admitted that (1) defendant Stumbo and the decedent were brothers-in-law and good friends, (2) the shooting occurred in the context of defendant attempting to break up a fight between his cousin and the decedent, (3) the cousin had cocked the gun before placing it on the seat of the car, and (4) immediately after the shooting, defendant Stumbo said, "Oh God, I didn't know the gun was cocked."

Since the issue of the sufficiency of the evidence under *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), was not exhausted in state court nor raised by the parties, we have no occasion to rule on this issue. We do hold that in a case such as this, where the evidence of guilt is at best conflicting, prosecutorial misconduct such as that which occurred in the instant case, which tends to prejudice and inflame the jury, deprives the defendant of a fundamentally fair trial and deprives him of due process of law.

Accordingly, we reverse the decision of the District Court and grant the writ of habeas corpus, with orders that the State of Kentucky either release the petitioner or retry him within 90 days.

CORNELIA G. KENNEDY, Circuit Judge, concurring in part and dissenting in part.

I concur in that portion of the majority's opinion which holds that Kentucky does not violate due process by permitting privately retained counsel to assist the public prosecutor in the trial of criminal cases.

I dissent, however, from the holding of the majority that petitioner's trial was so fundamentally unfair that he was denied due process of law. I cannot agree with the majority that the evidence in this case was

weak. Only three witnesses observed the actual shooting—petitioner, Joe Clark and Leonard "Lightning" Joseph. Clark testified that he saw petitioner come around the front of the car in which Clark was seated.

A. He had a gun kind of like this. It wasn't down and it wasn't up. He run up to Larry and Larry started backing up. * * * Larry [the deceased] was backing up and Stevie was in front of him going right back with him. And then I heard the gun go off. Larry fell and Willie [the driver of the car in which Clark was sitting] took off, said, "Let's go to the house. and call an ambulance," said he shot him.

Q.27. What, if anything, was the deceased Larry Johnson doing to this young lad; Stevie Stumbo, at the time the shot went off?

A. Nothing as I could see.

Q.28. Did you—What, if anything, as he backed up, as Larry backed up, what if anything was he doing to this defendant as he was backing up?

A. Nothing that I seen.

App. 116.

Joseph testified that petitioner put the gun which he had in his hand in the deceased's stomach. He showed the jury how this was done. "He just walked up and punched it up in his belly." (App. 114).

Petitioner was unable in his testimony to explain why the gun fired or how the bullet entered deceased's stomach. He denied pulling the trigger asserting that it must have fired accidentally.

The description of acts of prosecutorial misconduct attributed in the majority's opinion to the Kentucky Supreme Court is a list of instances cited by petitioner. It is not a list found by the Kentucky Supreme Court to have occurred. That court, after listing Stumbo's claimed instances of misconduct, discussed the last two, dealing with the conduct of the prosecutor while cross-examining petitioner's cousin, the owner of the gun. The Kentucky Supreme Court held that although the prosecutor assumed facts not in evidence in asking a question of the witness and asked a ques-

tion as to which an objection had been sustained, that there was an admonition to the jury and, that when considered against the background of the entire case, these items of misconduct did not rise to a level of prejudice that required reversal.

The record does not permit us to find one of petitioner's most vigorously argued complaints—"repeatedly shouting at the witnesses." The state trial court made a finding that in all but two instances the "shouting" complained of was the prosecutor's normal loud way of talking. On one of the remaining two occasions the prosecutor apologized for raising his voice and on the other the court directed him to keep his voice down. The state trial court's finding that the prosecutor was not shouting is binding on us. *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981) (Sumner I); *Sumner v. Mata,* 455 U.S. 591, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982) (Sumner II).

When, during examination of appellant, the prosecutor was repeatedly snapping the trigger on the gun and an objection was made, the court admonished the prosecutor not to snap the gun. He did not do so thereafter. If his conduct were so outrageous as to require a new trial one would expect the objection to have been made earlier.

Calling the victim the "dead boy" and appellant "young man" and on one occasion "young lad" (App. 115), although improper, is not so prejudicial that it deprived respondent of a constitutionally fair trial.

Although I agree with the majority that there was no factual basis for the argument that petitioner and his cousin conspired or agreed to murder the deceased, there was no objection to this argument. It should be noted that counsel for petitioner had previously argued that there was no evidence that petitioner and his cousin had planned to kill the deceased. (App. 357).

Using the phrase "Johnny Murder Boy" on one occasion and the statement that if the jury believed petitioner's "cock-and-bull story" murder cases would be "stacked up"

in Floyd County, was improper. But it is unlikely that they influenced the outcome of the trial. They are only arguments. In short, after having read the entire transcript of the trial I am not persuaded that the prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1973).