COMMONWEALTH of Kentucky, Appellant,

v.

Jack Curtis HUBBARD, Appellee.

No. 88-SC-938-DG.

Supreme Court of Kentucky.

July 7, 1989.

As Corrected Sept. 21, 1989.

Rehearing Denied Nov. 9, 1989.

Frederic J. Cowan, Atty. Gen., Robert W. Hensley, Ian Sonego, Asst. Attys. Gen., Frankfort, for appellant.

J. Kirk Griggs, II, Lexington, for appellee.

WINTERSHEIMER, Justice.

This appeal is from a judgment based on a jury verdict convicting Hubbard of reckless homicide. He was sentenced by the circuit judge to three years in prison when the jury failed to agree on a sentence.

The precise questions presented are whether the employment of private counsel to assist the Commonwealth Attorney in the prosecution of a criminal case violates the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution and whether K.R.S. 532.055(4) violates the due process clause of the Fourteenth Amendment to the United States Constitution by authorizing the trial judge to impose a sentence in excess of the minimum sentence but less than the maximum prescribed by statute if the jury fails to agree on a sentence.

In regard to the matter of private prosecutorial assistance, the Court of Appeals decided that private prosecutors were untenable relics of the past and violative of federal due process. The Court of Appeals majority did recognize that the practice had been long sanctioned in Kentucky and most other states. Similarly, despite acknowledging the acceptance of K.R.S. 532.055(4) in *Commonwealth v. Reneer*, Ky., 734 S.W.2d 794 (1987), the majority of the Court of Appeals panel distinguished *Reneer, supra*, because it was argued as a separation of powers violation rather than as a due process case. This Court accepted review.

■ The employment of private counsel to assist the Commonwealth Attorney in the prosecution of a criminal case does not violate the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution. It has been previously held that it is permissible for the circuit court and the Commonwealth Attorney to permit a private attorney to assist the Commonwealth Attorney in prosecuting a criminal case. *Goehring v. Commonwealth,* Ky., 370 S.W.2d 822 (1963); *Earl v. Commonwealth,* Ky.App., 569 S.W.2d 686 (1978). The Sixth Circuit Court of Appeals in *Stumbo v. Seabold,* 704 F.2d 910 (6th Cir.1983) held that the employment of private counsel to assist an elected prosecutor is not *per se* unconstitutional. *See also, Jones v. Richards,* 776 F.2d 1244 (4th Cir. 1985), cited in 63A Am.Jur.2d *Prosecuting Attorneys* § 13 (1988 pocket pt. p. 48). *Also see* 27 C.J.S., *District and Prosecuting Attorneys* § 28(2a), pp. 710–712, 1988 pocket pt. p. 196.

The Court of Appeals for the Second Circuit has determined in *Sassower v. Sheriff of Westchester County,* 824 F.2d 184, 191 (2nd Cir.1987), that *Young v. United States, ex rel Vuitton et Fils S.A.,* 481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987), the case relied on by our Court of Appeals panel in deciding this issue, is not applicable to state criminal contempt proceedings because it was decided under the U.S. Supreme Court's supervisory authority over federal courts, and not as a federal constitutional ruling. Decisions of the U.S. Supreme Court based on its supervisory authority over federal courts are not binding on the states. *Smith v. Phillips,* 455 U.S. 209, 221, 102 S.Ct. 940, 948, 71 L.Ed.2d 78 (1982). A majority of the U.S. Supreme Court in *Young, supra,* declined to adopt the concurring opinion of Justice Blackmun which found a due process clause violation, but rather, the Court held that, "We rely today on that (supervisory) authority to hold that counsel for a party that is the beneficiary of a court order may not be appointed as prosecutor in a contempt action alleging a violation of that order." *Young,* at 481 U.S. at 808, 107 S.Ct. at 2137, 95 L.Ed.2d 759.

It is our opinion that *Young* does not require a reversal of Hubbard's conviction. Unlike *Young, supra,* the Commonwealth Attorney's office maintained control over the prosecution of the case. It should be noted that the ethical conduct of any private counsel should be measured by the same standard as applied to the Common-

wealth Attorney. Private counsel who undertake the duties of prosecution may not become involved in any civil matter related to the criminal prosecution. DR 9-101(B).

■ K.R.S. 532.055(4) does not violate the due process clause of the Fourteenth Amendment of the U.S. Constitution by authorizing the trial judge to impose a sentence in excess of the minimum sentence prescribed by statute if the jury fails to agree on a sentence.

In this case, the jury made all factual findings necessary to determine the applicable sentencing statute and range of sentence, reckless homicide, Class D Felony, K.R.S. 507.050 and K.R.S. 532.060. Once the jury found Hubbard guilty of reckless homicide, no further findings were necessary. The only decision remaining was that of fixing a sentence at one to five years.

The Court of Appeals reliance upon *Hicks v. Oklahoma,* 447 U.S. 343, 100 S.Ct. 2227, 65 L.Ed.2d 175 (1980) is misplaced because the Oklahoma statute required the jury to fix the punishment in the first instance. The trial judge in *Hicks, supra,* acted with no statutory authority in fixing the initial sentence. We have similarly held in *Wilson v. Commonwealth,* Ky., 765 S.W.2d 22 (1989), that the criminal defendant has a statutory right to have his sentence set by the jury. In *Wilson,* we did not need to address subsection 4 of K.R.S. 532.055. However, this Court in *Commonwealth v. Reneer, supra,* under the principles of comity, has approved of the limited circumstances that K.R.S. 532.055(4) encroaches upon the defendant's right to jury sentencing under RCr 9.84.

Here, the action of the trial judge in determining sentence without a sentencing verdict from the jury was not arbitrary because it was authorized by statute. The action of the trial judge was the result of the state statute applicable to all felony cases, except death penalty cases. This case, unlike *Hicks, supra,* was not irrationally singled out or irrationally treated differently than any other felony case. The Commonwealth has a legitimate state interest in avoiding the retrial of criminal defendants solely for the purpose of sentencing. *Cf. Buchanan v. Kentucky,* 483 U.S. 402, 107 S.Ct. 2906 at 2915–2916, 97 L.Ed.2d 336 (1987).

In this case, the trial judge correctly refused to consider the statements by individual jurors regarding votes for a particular sentence during the deliberations of the jury. The verdict of the jury at the sentencing phase was in effect a failure to reach agreement on sentencing. In such a situation, the statute clearly authorizes the trial judge to act. K.R.S. 532.055(4) does not violate Hubbard's right to due process under the U.S. Constitution and the U.S. Constitution does not prohibit judicial sentencing when the jury fails to agree on a sentence.

The judgment of conviction is affirmed and the decision of the Court of Appeals is reversed.

COMBS, GANT, LAMBERT and VANCE, JJ., concur.

LEIBSON, J., dissents by separate opinion in which STEPHENS, C.J., joins.

LEIBSON, Justice, dissenting.

Respectfully, I dissent.

The flaw in the Majority Opinion is that it states the issues before us too narrowly. It restricts the problems of private prosecutor and judge sentencing to whether the procedures utilized violate the "due process" clause in the Federal Constitution. It omits the broader question, which is, what is our duty and responsibility under the "Rule–Making Power" entrusted to us under Section 116 of our Kentucky Constitution?

If our only concern is to narrow the issues to what is essential to affirm a criminal conviction, I would agree there is no United States Supreme Court majority decision prohibiting on "due process" grounds, where state law so permits, either the use of a private prosecutor or judge sentencing. As stated in the Majority Opinion, *Young v. United States, ex rel. Vuitton et Fils S.A.,* 481 U.S. 787, 107 S.Ct. 2124, 95

L.Ed.2d 740 (1987), utilized the supervisory authority of the United States Supreme Court to strike down the use of the victim's privately employed attorney as a public prosecutor. Only the Concurring Opinion by Justice Blackmun speaks to "a failing more fundamental than that relied upon by the Court," i.e., lack of "due process" in this procedure. 481 U.S. at 814–815, 107 S.Ct. at 2141, 95 L.Ed.2d at 763. And, as our Majority Opinion states, *Hicks v. Oklahoma,* 447 U.S. 343, 100 S.Ct. 2227, 65 L.Ed.2d 175 (1980), does not establish a "due process" right, *per se,* to jury sentence. *Hicks* "held only that where state law creates for the defendant a liberty interest in having the jury make particular findings, the Due Process Clause implies that appellate findings do not suffice to protect that entitlement." *Cabana v. Bullock,* 474 U.S. 376, 387–388 n. 4, 106 S.Ct. 689, 697 n. 4, 88 L.Ed.2d 704, 717 n. 4 (1986).

Thus, if our only concern is whether Hubbard's conviction can squeeze by the standards imposed by the Due Process Clause as thus far interpreted by the United States Supreme Court, we need go no further. But this approach abdicates the responsibility entrusted to us under the Kentucky Constitution to provide and administer appropriate "rules of practice and procedure for the Court of Justice," and to supervise the practice of law in this Commonwealth. Ky. Const., Section 116.

It is true that Kentucky has a long history of permitting private counsel to participate in criminal prosecution. This is a history founded upon the circumstances of a different age. The Court of Appeals' Opinion, which we have reversed, takes the view that "[p]rivate prosecutors are untenable relics of the past," and I agree. They have become an anachronism with the reform of the prosecutorial function embodied by the "Unified and Integrated Prosecutor System," KRS 15.700–.765, effective January 1, 1978. Its purpose is "to provide for the general supervision of criminal justice by the attorney general as chief law enforcement officer of the Commonwealth, in order to maintain uniform and efficient enforcement of the criminal law and administration of criminal justice throughout the Commonwealth." KRS 15.700. It provides, *inter alia,* a system for replacement of a "local prosecutor" in the event of "incapacity," "refusal" or "failure" to act in any certain case or cases "without sufficient grounds," "inability," or "conflict of interest." KRS 15.715. It eliminates any need within the criminal justice system for private persons aggrieved by a criminal act to employ private lawyers to prosecute in the name of the state. If the duly appointed Commonwealth or County Attorney responsible for the case is incapable, unable, or unwilling to prosecute, the aggrieved citizen should apply for relief to the "prosecutors advisory council" created by KRS 15.705, which has the responsibility to see that any legitimate prosecution goes forward in the hands of a public prosecutor ready, willing and able to represent the Commonwealth appropriately.

We must not forget that it is the Commonwealth, not the alleged victim, who is the interested party in a criminal prosecution. Personal vengeance is not part of the system; nor is criminal prosecution a proper tool to advance recovery of private damages. The need for privately employed prosecutors has been eliminated, but the potential abuses from permitting such prosecutors remain.

Justice Blackmun's Concurring Opinion in *Young v. U.S., etc., supra,* makes this point: the system "requires a disinterested prosecutor with the unique responsibility to serve the public, rather than a private client, and to seek justice that is unfettered." 481 U.S. at 815, 107 S.Ct. at 2141. The question before us should not be limited to whether the Due Process Clause so requires; we should decide whether the proper performance of the supervisory authority entrusted to us by the Kentucky Constitution so requires. The Kentucky Court of Appeals, not having such supervisory power, elected to rest its decision on "concepts of 'law of the land' and 'due process of law'." To borrow from T.S. Elliott, it may be that the Court of Appeals yielded to the "temptation ... to do the right deed for the wrong reason." This is

no obstacle to our doing the right deed for the right reason.

The result reached by the Court of Appeals is:

"Permitting the assistance of a private prosecutor, under the majestic cloak of state authority, can result in a multitude of harm to a system committed to disinterested prosecution."

This is a right result, and it should be affirmed, even though our affirmance would rest on different grounds.

It is reckless and misleading for the Majority Opinion to assume that the "ethical conduct" of a lawyer privately employed by the victim will comply to "the same standard as applied to the Commonwealth Attorney." On the contrary, there is a conflict of interest between the duty owed to his client by a lawyer privately employed and the duty owed by the public prosecutor. Neither the former Code of Professional Responsibility, nor the newly adopted Kentucky Rules of Professional Conduct now codified in SCR 3.130, impose obligations on a lawyer privately employed by the alleged victim other than those applicable to any other private representation. His duty, loyalty and ethical responsibilities are to pursue his client's interest within the bounds of the law. The Commonwealth is not his client, and certainly, neither is the criminally accused. On the other hand, the public prosecutor is responsible to both. We can expect rapid deterioration of public confidence and respect for lawyers, if, by this Opinion, we impose on lawyers privately employed a system of divided loyalties.

The contrast between the duties of a private lawyer and a public prosecutor are evident from "the function of the prosecutor" as set out in the *ABA Standards Relating to the Administration of Criminal Justice,* (1979). Standard 3-1.1 states in pertinent part:

"(b) The prosecutor is both an administrator of justice and an advocate; the prosecutor must exercise sound discretion in the performance of his or her functions.

"(c) The duty of the prosecutor is to seek justice, not merely to convict."

Recently, in *KBA v. Lovelace,* Ky., —— S.W.2d —— (rendered June 29, 1989), we held that a public prosecutor was guilty of unethical conduct because he "abused his position as Commonwealth Attorney by using the criminal process to the advantage of his civil clients." The misconduct involved, in pertinent part, was the opposite side of the same coin handed to us in this case: the prosecutor was engaged in public prosecution of persons criminally accused and private representation of the alleged victim regarding the same subject matter. We stated, "there is a clear conflict between criminal responsibilities and civil activities." It is almost a given in every case that the victim of a crime is by the same token the victim of a tort with the right to private damages against the perpetrator. The "clear conflict" between public and private representation is inherent whenever the same attorney serves as both public prosecutor and private counsel.

The Majority Opinion recognizes the obvious contradiction between the *Lovelace* Opinion and the present case, between censoring the public prosecutor for private representation involving the same subject matter while authorizing a privately employed attorney to participate directly in the public prosecution. It seeks to remedy the situation by stating:

"Private counsel who undertake the duties of prosecution may not become involved in any civil matter related to the criminal prosecution. DR 9-101(B)."

This is a miscitation. DR 9-101(B) states:

"A lawyer shall not accept private employment in a matter in which he had substantial responsibility while he was a public employee."

This rule [1] is plainly limited to lawyers moving from public office to private practice. It cannot apply to the present situation. A privately employed prosecutor is not a "public employee" in any sense of the word. A privately employed prosecutor cannot be charged with ethical violation of

---

**1.** Which is carried into our newly adopted Code of Professional Conduct in Rule 1.11 and 1.12.

DR 9–101(B) for continuing to represent his client after the public prosecution is concluded, that is, not unless we have haphazardly enlarged our ethical rules by an off-hand comment in a judicial opinion.

As stated in the Appellee's Brief:

"In the present case private counsel was being paid by the decedent's family for the sole purpose of procuring respondent's conviction. The conflicts are built in and it is untenable to suggest that privately retained counsel can meet the demands imposed by law upon a Commonwealth Attorney. Having a 'private prosecutor' is ... a contradiction in terms."

Next, the Majority Opinion invokes the new Truth–In–Sentencing statute, KRS 532.055, to approve the trial judge's decision to impose a sentence in excess of the minimum sentence prescribed by statute when the jury failed to agree on a sentence. Once again, this is *ad hoc* procedural rule-making on a subject where the rules should not be changed without first following the elaborate safeguards in the rule-making process. We ignore an important part of our own decision in *Commonwealth v. Reneer*, Ky., 734 S.W.2d 794 (1987), which pronounces the Truth–In–Sentencing statute a violation of the separation of powers doctrine enunciated in Section 28 of the Kentucky Constitution. In *Reneer*, we state that this unconstitutional statute will be applied only as a matter of "comity":

"We reserve the right to consider any abuses or injustices ... and we accept its provisions for the time being under the principle of comity."

This implies that we have not abdicated our judicial rule-making responsibility, that in each instance where a new aspect of the Truth–In–Sentencing statute is challenged, we will make an independent judgment regarding the value of the new procedural offering. Nevertheless, as in *Huff v. Commonwealth*, Ky., 763 S.W.2d 106 (1988), here, once again we disregard our holding in *Reneer* and embrace the change in procedure blindly and without regard to considering its value as a rule change. We review only its "due process" implications.

Our decision in the present case makes a fundamental change in the sentencing process. It encroaches on the time honored system of jury sentencing in Kentucky. Heretofore, except where the defendant pled guilty, we recognized the right to jury sentencing, and the right to retrial on the question of an appropriate sentence by jury when a mistrial occurs during the sentencing phase. *See Commonwealth v. Crooks*, Ky., 655 S.W.2d 475 (1983). The Rules of Criminal Procedure, in RCr 9.84, provide that the jury "shall fix" the penalty. Heretofore, the present case would be no exception. The exception in RCr 9.84 "where the court is otherwise authorized by law to fix the penalty" does not apply to an unconstitutional statute that only has the force of "law" after we choose to give it "comity."

In my Dissent in *Huff v. Commonwealth, supra*, I state a "change to judge sentencing for Kentucky ... will take away from the people the power to make a fundamental and important decision, and transfer that power into the hands of governmental officials, the elected judiciary.... [S]uch a change should not be casually undertaken." 763 S.W.2d at 115. The present change, because of its limited application, does not destroy jury sentencing. Nevertheless, it is an encroachment on a long-standing, fundamental premise underlying the criminal justice system in Kentucky. Before undertaking such a change we should follow our carefully conceived, established policy for rule change. This includes a study and recommendation by the Supreme Court Committee on Criminal Rules, followed by a public hearing at the Kentucky Bar Association Annual Convention, before changing the rules. I disagree, not so much with the change, but with the precipitous nature by which we have accomplished it. I protest against our Court adhering blindly to a rule created by unconstitutional legislative incursion into the judicial rule-making process.

STEPHENS, C.J., joins this dissent.