**Michael Shaun BOONE, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 88–SC–839–MR.**

Supreme Court of Kentucky.

Nov. 30, 1989.

**616**

Mark Wettle, Appellate Public Defender, Louisville, for appellant.

Frederic J. Cowan, Atty. Gen., Frankfort, Lana Grandon, Asst. Atty. Gen., for appellee.

GANT, Justice.

In July, 1987, appellant was indicted on two counts of first-degree sodomy, one count of first-degree sexual abuse, and one count of first-degree rape. The victim herein was an eight-year-old girl with whom appellant and his wife had been retained to babysit. The rape charge was subsequently dismissed, and appellant was found guilty by the jury of the two counts of sodomy and the one count of sexual abuse. The jury recommended a 20–year sentence on each of the sodomy charges, to be served consecutively, and one year on the sexual abuse charge, to be served concurrently, for a total of 40 years. The trial court followed the jury's recommendation.

The sole issue on this appeal is the sentencing procedure prescribed by KRS 532.-055, which procedure was followed by the circuit court. Prior to the penalty phase, and after a finding of guilt as above set out, the Commonwealth notified the court and appellant that it would not offer evidence of minimum parole eligibility as provided by KRS 532.055(2)(a)1, whereupon appellant moved that he be permitted to introduce this evidence. Under KRS 439.3401, appellant would be considered a violent offender and thus required to serve a minimum of 50% of his sentence. This motion was denied.

On appeal, appellant argues that refusal to permit him to introduce this evidence of minimum parole eligibility and to place the sole control of said evidence in the Commonwealth is a denial of due process under the 6th and 14th Amendments of the Constitution of the United States and § 11 of the Kentucky Constitution.

As we have pointed out in previous opinions, Kentucky is one of the few states which provides for jury sentencing. Much of the trouble which arises in the sentencing procedure would be eliminated by judicial sentencing. However, as we pointed out in *Commonwealth v. Reneer,* Ky., 734 S.W.2d 794, 797 (1987):

One of the chief deficiencies in our present procedure is that, after reaching a verdict of guilt, the jury is required to sentence in a vacuum without any knowledge of the defendant's past criminal record or other matters that might be pertinent to consider in the assessment of an appropriate penalty. On balance, the inconvenience of a bifurcated trial is a small price to pay for a better informed sentencing process.

Thus, we have endorsed the concept of an enlightened jury in its consideration and assessment of an appropriate penalty. However, we agree with the appellant that to place this phase of the enlightenment solely in the hands of the prosecutor is a denial of due process to the appellant or any other defendant. If "Truth–in–Sentencing" is the objective sought by KRS 532.055, then either the defendant or the Commonwealth should be permitted to introduce evidence of minimum parole eligibility, and we so hold.

It is our opinion that that portion of KRS 532.055(2)(a)1 giving the sole power to introduce evidence of minimum parole eligi-

bility to the Commonwealth is unconstitutional, and the privilege of introducing said evidence shall be extended to the defendant and the Commonwealth.

The conviction herein is affirmed; the sentence is vacated, and this case is remanded to the McCracken Circuit Court for resentencing under the procedures outlined herein.

STEPHENS, C.J., and COMBS, VANCE and WINTERSHEIMER, JJ., concur.

LAMBERT, J., concurs in result only.

LEIBSON, J., dissents and files a separate dissenting opinion.

LEIBSON, Justice, dissenting.

Respectfully, I dissent.

This is Chapter IV in a book with an unhappy ending. In it we tear up the fabric of the judicial rulemaking process. Chapter I was *Commonwealth v. Reneer*, Ky., 734 S.W.2d 794 (1987); Chapter II, *Huff v. Commonwealth*, Ky., 763 S.W.2d 106 (1989); and Chapter III, *Commonwealth v. Hubbard*, Ky., 777 S.W.2d 882 (rendered September 7, 1989). This is a series of ill-advised, *ad hoc* rulemaking decisions that followed after the legislature intruded into the sentencing procedure with a statute misdesignated as "Truth–in–Sentencing," now codified in KRS 532.055.

KRS 532.055 mandates a separate "sentencing hearing before the jury," at which "the Commonwealth," not the defendant, may produce certain types of damaging "evidence" specified and enumerated therein. "Minimum parole eligibility" is on the list. Before the "Truth–in–Sentencing" statute such evidence was excluded as a matter of course under the Rules of Criminal Procedure and a long list of judicial precedents explaining why it was prejudicially erroneous.

In Chapter I of our judicial consideration of this new "Truth–in–Sentencing" legislation, *Reneer, supra*, we held that KRS 532.055 is unconstitutional, an "encroachment by the General Assembly upon the prerogatives of the Judiciary." *Id.* at 797. Then we made a fundamental mistake misapplying the "principle of comity" to adopt these far reaching procedural changes, despite the statute's unconstitutionality, as a substitute for our existing procedure covering the same subject matter. *Id.* at 798. Thus, with a stroke of the pen we threw out our own sentencing procedure, painstaking developed in the Rules of Criminal Procedure and case precedent.

My Dissent in *Reneer* comments, referring to the ill-advised decision to permit the Commonwealth to introduce evidence relevant to minimum parole eligibility:

"There is no way to comprehensibly convey to the jury all of the conflicting possibilities that surround parole eligibility.... The prospect of confusion and 'half-truths' is inevitable." 734 S.W.2d at 800.

In Chapter II, *Huff v. Commonwealth, supra*, we were presented with compelling arguments as to why permitting the Commonwealth to introduce evidence concerning minimum parole eligibility makes an indigestible stew of the sentencing process; why this violates "the due process clause of the Fourteenth Amendment of the United States Constitution and Section 2 of the Kentucky Constitution," and "equal protection guaranteed by both Constitutions"; why it "is unconstitutionally vague in its application." My Dissent in *Huff* comments appropriately. I will not repeat here.

In Chapter III, *Commonwealth v. Hubbard, supra*, we were confronted with the fact that a portion of KRS 532.055(4) is squarely in conflict with a time honored rule of practice. It makes the trial judge the sentence authority when "the jury is unable to agree as to the sentence." Under RCr 9.84 and KRS 532.070 (which has not been repealed) the jury "shall fix" the penalty in every case unless the defendant waives his right to jury sentencing. If a jury is unable to agree on the sentence, a new jury is to decide the appropriate sentence. Once again we change the rule with a stroke of the pen and attribute it to principles of "comity." My Dissent states:

"Once again, this is *ad hoc* procedural rule-making on a subject where the rules should not be changed without first following the elaborate safeguards in the rule-making process.

Now we come to Chapter IV, the present opinion. Our Court is presented with a different argument explaining why the present statute directly implicates the due process clause in both our Federal and State Constitutions. The new argument is so compelling none can refute it. It is that the changes in KRS 532.055(2)(a) are entirely one-sided. Only the Commonwealth, and *not* the defendant, may offer evidence about the matters enumerated therein. Instead of responding by rejecting a rule which is patently unacceptable, we elect to write a *new* rule in this Opinion, a rule never before considered by our Court. We order that *both* sides may now introduce evidence regarding minimum parole eligibility. Perhaps this rule suffices to meet the due process shortcomings in a statute that permits only the Commonwealth to introduce such evidence. But it does not meet the due process complaints registered in *Huff.* They remain unanswered. Worse yet, the new rule is a fatal injury to the rulemaking processes developed by our Court to insure appropriate and orderly changes in the Rules of Criminal Procedure, processes essential to insure both quality and legitimacy. Returning to my Dissent in *Hubbard:*

"Before undertaking such a change we should follow our carefully conceived, established policy for rule change. This includes a study and recommendation by the Supreme Court Committee on Criminal Rules, followed by a public hearing at the Kentucky Bar Association Annual Convention, before changing the rules." Draft Op., p. 9.

This new "Band–Aid" approach creates problems worse than leaving the wound untreated. We should view it as completely unacceptable. This is a giant step beyond *Reneer* and *Huff* where we adopt the General Assembly's sentencing procedure in place of our own "under the principles of comity" (*Reneer, supra* at 797), because the present rule change does *not* adopt the statute. On the contrary, the rule change mandated in this Opinion adds to and conflicts with the statute. In KRS 534.055(2)(a) the General Assembly states that the "Commonwealth," and only the Commonwealth, may introduce evidence "relevant to sentencing" on the subjects itemized therein, including "[m]inimum parole eligibility." A separate subparagraph, (2)(b) of KRS 532.055, covers the evidence that "[t]he defendant may introduce," and it states such evidence is limited to rebuttal evidence to "mitigate" such evidence as the Commonwealth might offer.

Thus, our new rule, judicially adopted in this case, rests neither on accommodating the legislative enactment, i.e., "principles of comity," nor on the rulemaking process formerly required and applicable before making a significant change in criminal procedure. Nor is there case authority, or any authority, for introducing this new procedure *ad hoc.* In sum, we are rending the fabric of our judicial process in an unprecedented manner to save a bad rule by extending it. The damage to our rulemaking process from this precedent may be irreparable.

The Majority Opinion blames "the trouble which arises in this sentencing procedure" on jury sentencing, and opines it "would be eliminated by judicial sentencing." This remark is dicta, both ill-advised and unnecessary to the Opinion. In fact, there is no more justification for a judge to consider the vagaries and uncertainties of parole eligibility in fixing an appropriate sentence than there is reason for a jury to do so. Either way, judge or jury sentencing, the "matter of the future disposition of a convicted defendant is wholly and utterly foreign to his guilt and is not a proper consideration . . . in determining the length of his sentence." *See Farris v. State,* 535 S.W.2d 608, 614 (Tenn.1976), as quoted in my Dissent in *Huff v. Commonwealth, supra* at 112. The sentencing authority, judge or jury, in setting an appropriate sentence, cannot and should not try to second guess the prison and parole system. The future disposition of the prisoner after sentencing is a matter that addresses itself to the prison authorities and the executive branch of the government subject to the

laws of the General Assembly appropriately controlling their discretion. As I stated in *Reneer:*

"In our present sentencing system, at the point where a convicted offender is turned over to the Department of Corrections, the power to determine the period of incarceration passes completely to the Parole Board." *Reneer, supra* at 800.

Whether and when a convicted felon will be released short of the expiration date of his sentence is not a judicial function, nor is it an appropriate consideration in exercising the judicial function. Indeed, from the standpoint of the judicial process, it is an extraneous speculation.

As I state in my Dissent in *Reneer,* the time is long overdue for our General Assembly to deal with the problems created by "our present unwieldy and unworkable parole system ... that has destroyed credibility and public confidence in criminal sentencing." *Id.* at 800. The problems generating from early release of convicted felons were not caused by our judicial sentencing process and will not be materially improved by our new *ad hoc* rulemaking approach. Our present approach, seeking to integrate considerations of parole, an executive function, in the exercise of the judicial function, makes matters worse.

In the present case the trial judge excluded the evidence offered by the defendant on parole eligibility because the statute does not permit it. He was correct and should be affirmed. He should not be required to anticipate that we will amend the statute in direct conflict with the express intent of the General Assembly.

We should declare KRS 532.055 unconstitutional. We should restore the sentencing procedure to its condition before *Reneer.* It is of equal or greater importance that we should undertake major revisions in our Rules of Criminal Procedure only by the appropriate rulemaking process now in place. The present decision is destructive of that procedure.