Michael Shaun **BOONE**, Appellant,

v.

**COMMONWEALTH** of Kentucky, Appellee.

No. 90–SC–235–MR.

Supreme Court of Kentucky.

Jan. 16, 1992.

Mark J. Wettle, Appellate Public Advocate, Louisville, for appellant.

Chris Gorman, Atty. Gen., Lana Grandon, Asst. Atty. Gen., Crim. Appellate Div., Frankfort, for appellee.

SPAIN, Justice.

By an Opinion entered on November 30, 1989, this Court affirmed the appellant's conviction by a McCracken Circuit Court jury of two counts of first-degree sodomy and one count of first-degree sexual abuse upon an eight-year-old girl. *Boone v. Commonwealth*, Ky., 780 S.W.2d 615 (1989). The sentence of forty years' imprisonment, however, was set aside, and a

portion of KRS 532.055(2)(a)1. was held unconstitutional for permitting only the Commonwealth to introduce evidence before the jury of minimum parole eligibility during the punishment phase of a bifurcated trial.

Upon remand, a second sentencing hearing was held during which reversible error was committed, as is conceded by the Commonwealth. Consequently, we vacate the sentence of imprisonment for one hundred and twenty-five years and once again remand for yet another sentencing hearing.

Appellant insists that upon such a remand and separate hearing to fix punishment, the new jury may only hear evidence as to those matters specifically itemized in KRS 532.055(2)(a) and (b), viz.

(a) Evidence may be offered by the Commonwealth relevant to sentencing including:

1. Minimum parole eligibility, prior convictions of the defendant, both felony and misdemeanor;

2. The nature of prior offenses for which he was convicted;

3. The date of commission, date of sentencing and date of release from confinement or supervision from all prior offenses;

4. The maximum expiration of sentence as determined by the division of probation and parole for all such current and prior offenses; and

5. The defendant's status if on probation, parole, conditional discharge, or any other form of legal release;

(b) The defendant may introduce evidence in mitigation. For purposes of this section, mitigating evidence means evidence that the accused has no significant history of criminal activity which may qualify him for leniency. This section shall not preclude the introduction of evidence which negates any evidence introduced by the Commonwealth....

■ In support of this contention, appellant argues that the statute specifically sets out what may be introduced in the punishment phase and that it is intended to be inclusive and limiting. We do not agree. It is clear from reading the statute as a whole that it was written to cover the normal bifurcated trial where the guilt phase and punishment phase follow in close proximity of time and are both heard by the same jury. Where, as here, a subsequent separate punishment phase is necessary because of reversible error committed only in that phase at the original trial, common sense dictates that the second jury must be told something about what transpired during the earlier guilt phase if they indeed are not "to sentence in a vacuum without any knowledge of the defendant's past criminal record or *other matters that might be pertinent to consider in the assessment of an appropriate penalty.*" *Commonwealth v. Reneer*, Ky., 734 S.W.2d 794, 797 (1987). (Emphasis supplied.)

■ Having said that, it is now our task to attempt to outline for bench and bar those matters which we believe "might be pertinent" for such a "punishment phase jury" to consider in addition to those matters itemized in KRS 532.055(2). In doing so, we must be mindful not only of legalities, but also of practicalities. For example, if the original guilt phase of a trial extended over a two-week period, the free-standing punishment phase would last even longer if we were to require a complete reading to the jury of a verbatim transcript or the projection of a videotaped record of the guilt phase. This would rarely, if ever, be practical or justifiable, notwithstanding the fact that it would be the most comprehensive.

Rather, we believe it would suffice, in most cases, for the jury to have read to it (a) the charges from the indictment of which the defendant was found guilty; (b) any charge of which the defendant was found guilty which was a lesser-included offense to a charge set out in the indictment; (c) the jury instructions given by the trial court at the guilt phase; and (d) the jury's verdict.

In addition to the matters set out above, should both sides agree, each could read a concise summary of the evidence which it offered and which was admitted at the guilt phase of the earlier trial. Similarly,

the closing arguments of both sides from the guilt phase could be read or projected if both agreed.

In the event that the parties cannot agree as to the summaries of the evidence referred to above, then each could submit its proposed summary to the opposing party and the court, who could then determine what the summaries would contain after hearing any objections and argument from the opposing party.

This case is remanded to the McCracken Circuit Court for resentencing under the procedures outlined herein.

COMBS, LAMBERT, REYNOLDS and WINTERSHEIMER, JJ., concur.

LEIBSON, J., dissents by separate opinion, in which STEPHENS, C.J., concurs in the portion that addresses violation of the hearsay rule.

LEIBSON, Justice, dissenting.

Respectfully, I dissent from the final portion of the Majority Opinion, which states as follows:

"In the event that the parties cannot agree as to the summaries of the evidence referred to above, ['should both sides agree, each could read a concise summary of the evidence which it offered and which was admitted at the guilt phase of the earlier trial'], then each could submit its proposed summary to the opposing party and the court, who could then determine what the summaries would contain after hearing any objections and argument from the opposing party."

This Court should not countenance, let alone create, a procedure which contemplates using as the trial judge's "summaries of the evidence," his memory and opinion as to what was the evidence at a former trial *as evidence* in a new trial for two reasons:

First of all, it is *rank hearsay;* violation of a concept so fundamental it should need no amplification:

"[I]n the 19th century, the so-called *hearsay rule* became one of the dominant rules of the law of evidence.... one simple, if utopian, idea, ... juries should not hear secondhand evidence; they should hear Smith's story out of his own mouth, and not Jones's account of what Smith had to say." Prof. Lawrence M. Friedman, "A History of American Law," 2d ed., p. 153 (1985).

As I stated in my Dissenting Opinion in *Hall v. Commonwealth,* Ky., 817 S.W.2d 228 (1991) [1]:

"In Kentucky, the penalty phase of a criminal trial is now, as it always has been, as much a part of a criminal trial as the guilt phase. I am shocked to learn inadmissible evidence is appropriate to prove anything in a jury trial. Nor do I believe the General Assembly contemplated that the word 'evidence' in KRS 532.055(2)(a) (where the statute states that certain specified '[e]vidence may be offered by the Commonwealth relevant to sentencing'), would or could mean anything less than evidence *competent* under the rules of evidence."

Second, permitting the use of court summaries of the evidence *as evidence* cannot fairly be considered as simply construing or interpreting the Truth–In–Sentencing statute; it is, in a word, *supplementing* the statute. To supplement the statute violates basic principles on separation of powers mandated by the Kentucky Constitution, Secs. 27 and 28. As stated in *Hatchett v. City of Glasgow,* Ky., 340 S.W.2d 248, 251 (1960):

"[C]ourts are not at liberty to supply words or insert something or make additions [to statutes] which amount, as sometimes stated, to providing for a *casus omissus,* or cure an omission, however just or desirable it might [seem to] be to supply an omitted provision."

In the first appeal of this same case, *Boone v. Commonwealth,* Ky., 780 S.W.2d 615 (1989), our Court erroneously added to the Truth–In–Sentencing statute by judicial fiat. Now we are repeating the same kind of error, for a second time in the same

---

**1.** Joined by two other members of this Court, Chief Justice Stephens and Justice Combs.

case, once again trying to patch up an unworkable statute.

In the *first* appeal we recognized that the statute in question was fundamentally unfair because it permitted the Commonwealth to introduce evidence regarding "minimum parole eligibility," but not the defendant. We stated:

"[T]o place the sole control of said evidence in the Commonwealth is a denial of due process under the 6th and 14th Amendments of the Constitution of the United States and § 11 of the Kentucky Constitution." *Id.* at 616.

Then, instead of *striking down* what was unconstitutional, we *supplemented* the statute stating:

"If 'Truth-in-Sentencing' is the objective sought by KRS 532.055, then either the defendant or the Commonwealth should be permitted to introduce evidence of minimum parole eligibility, and we so hold." *Id.* at 616.

I dissented in the first *Boone* appeal, not because I disagreed that the statute as enacted was fundamentally unfair and a violation of due process under both the United States and Kentucky Constitutions, but because the obvious unconstitutionality of the statute as written was reason to declare the statute unconstitutional. But such reason gave us no license to patch it up.

In my Dissent in the first *Boone* appeal, referring to our series of ill-considered opinions salvaging the Truth–In–Sentencing procedure, I stated:

"This is Chapter IV in a book with an unhappy ending. In it we tear up the fabric of the judicial rulemaking process. Chapter I was *Commonwealth v. Reneer*, Ky., 734 S.W.2d 794 (1987); Chapter II, *Huff v. Commonwealth*, Ky., 763 S.W.2d 106 (1989); and Chapter III, *Commonwealth v. Hubbard*, Ky., 777 S.W.2d 882 (1989)." *Id.* at 617.

Now we have written Chapter V.

In Chapter V we write a statute authorizing the use of hearsay, the trial court's "summaries of the evidence" from a prior trial, as sentencing evidence in Boone's re-trial. There is simply *no exception to the* hearsay rule permitting the judge to state as evidence his opinion as to what was said at the previous trial, for the jury to use as evidence at the retrial. The statute enacted by the General Assembly did not include such a procedure; indeed, had it done so, hopefully we would recognize a violation of the constitutional limitation on making legislative exceptions to the hearsay rule, violations of the defendant's right "to meet the witnesses face-to-face." Ky.Const., § 11; *Drumm v. Commonwealth*, Ky., 783 S.W.2d 380 (1990). By our supplementation of the Truth–In–Sentencing statute in this case, we have committed the same violation of the defendant's basic constitutional right which we denied the General Assembly in the *Drumm* case.

Hearsay is hearsay, whether authorized by the act of the General Assembly or by the Supreme Court of Kentucky.

As I stated in dissent in *Hall v. Commonwealth, supra:*

"The bottom line in the Majority Opinion is that we need not be concerned whether evidence offered by the Commonwealth in the penalty phase of a criminal case qualifies as competent under the rules of evidence. We seem to grow increasingly impatient with any obstacle to extracting the maximum sentence from the jury."

The problem here is far more serious than the one presented in *Hall v. Commonwealth.*

STEPHENS, C.J., concurs in the portion of this dissenting opinion that addresses violation of the hearsay rule.