# IMPORTANT NOTICE
## <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: APRIL 23, 2009
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2007-SC-000358-MR

DATE 5|14|09 _Kelly Klabur_ D.C.

GORDON STRANGE          APPELLANT

V.

ON APPEAL FROM POWELL CIRCUIT COURT
HONORABLE FRANK A. FLETCHER, JUDGE
NO. 06-CR-00016

COMMONWEALTH OF KENTUCKY          APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

This is an appeal from a judgment in which Appellant was convicted of first-degree assault and second-degree arson for severely burning his stepdaughter and burning his trailer down. Appellant assigns as error: the refusal to instruct on second-degree assault; allowing the prosecutor to question the victim's characterization of the crime as an "accident"; allowing an arson expert to testify beyond his expertise; admission of a computer print-out of Appellant's prior convictions without an authenticating witness; and refusing to inform the jury of the 85% serve-out rule for a violent offender. We reject the first four claims of error and adjudge that the error in not allowing the jury to hear the "violent offender" minimum parole eligibility information did not rise to the level of palpable error in this case. Hence, we affirm.

Appellant, Gordon Strange, was Michelle Thorpe's stepfather for ten years, until she was around 16 years of age when her mother and Strange divorced. In February of 2006, Thorpe was living on and off with Strange in his trailer. In the early morning hours of February 7, 2006, Thorpe was making a bed on Strange's couch when she turned around and saw Strange dousing kerosene all around the kerosene heater. Strange then threw kerosene all over Thorpe, from the bottom of her legs to the top of her waist. According to Thorpe's testimony, she asked Strange if he was going to burn her and he said yes. Strange then jumped on Thorpe, held her down on the couch and lit the kerosene with a lighter. Thorpe's body was immediately consumed by flames and Strange fled the trailer.

Thorpe sustained burns to over 80% of her body, including her legs, trunk, chest, neck and face. She was in a coma for months and suffered painful skin grafts and debriding. Thorpe was in the hospital for approximately five months and required in-patient physical therapy for another four months to continue treating the burns and learn how to walk again. At the time of trial, Thorpe's elbows were still locked and she could not cook, dress herself or completely sit down.

On March 1, 2006, Strange was indicted on charges of first-degree assault and first-degree arson. Pursuant to a jury trial on March 26-28, 2007, Strange was found guilty of first-degree assault and second-degree arson. The jury recommended a sentence of 20 years for the assault and 10 years for the

2

arson, with five years to run concurrently, for a total of 25 years. From the judgment sentencing Strange according to the recommendations, Strange now appeals.

## SECOND-DEGREE (WANTON) ASSAULT INSTRUCTION

Strange tendered instructions in the case which included a second-degree assault instruction identical to the instruction ultimately submitted to the jury. The instruction was based on KRS 508.020(a), for "intentionally caus[ing] serious physical injury to another person." The only assault instruction tendered by Strange with a wanton mental state was the fourth-degree assault instruction. And during the discussion on the instructions, defense counsel did not argue for a second-degree assault instruction based on a wanton mental state (KRS 508.020(c)). However, the next day, right before the instructions were to be read to the jury, defense counsel stated that she thought, from the previous day's discussion, there was going to be a second-degree assault instruction based on a wanton mental state (KRS 508.020(c)) instead of an intentional mental state (KRS 508.020(a)). The court denied the inclusion of a second-degree assault instruction under KRS 508.020(c), concluding that "the instruction as given is consistent with the evidence."

No assault instruction was ultimately given with a wanton mental state, although the jury was instructed on third-degree arson which required a wanton mental state with respect to the damage to or destruction of the trailer. The jury was instructed on first and second-degree assault, both based on an

3

intentional mental state. The jury found Strange guilty of first-degree assault, finding that he intentionally caused serious physical injury to Thorpe by setting her on fire and that the fire was a dangerous instrument. KRS 508.010(a). Strange now argues that the trial court erred in failing to instruct on wanton second-degree assault.

In the police interviews with Strange, which were admitted into evidence, Strange told the detective that he poured or splashed kerosene on the bottom of Thorpe's pajamas because he was upset that Thorpe had been out that night with "a bunch of crackheads." Strange insisted that he was just joking around though, stating. "I knew it might catch on fire, but, God damn, I could smack it right back out with my hands, you know." At one point in the interview, Strange admitted that he had ignited the kerosene on Thorpe with a lighter. Strange told the detective, "Seem like we's getting ready to light a cigarette, and then I just said, why, hell, I'll just – you know, touch it to her pants when I was lighting a cigarette, and by God, it just flew." At another point in the same interview, Strange stated that he could not remember whether he lit her with a lighter or she got too close to the kerosene heater and ignited.

At trial, Strange testified that he splashed kerosene on Thorpe to make her be quiet because she was "fussing." He stated that he did not mean for her to get burned like she got burned. Strange denied having a lighter the night of the fire and testified that if he pushed her into the heater, he did not mean to.

Subsection (c) of KRS 508.020 provides that "[a] person is guilty of

4

assault in the second degree when . . . [h]e wantonly causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument." "Wantonly" is defined in KRS 501.020(3) as follows:

> "Wantonly"--A person acts wantonly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. A person who creates such a risk but is unaware thereof solely by reason of voluntary intoxication also acts wantonly with respect thereto.

KRS 501.020(1) provides that "A person acts intentionally with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause that result or to engage in that conduct."

It is the duty of the trial court to instruct the jury on every theory of the case deducible from the evidence. Fredline v. Commonwealth, 241 S.W.3d 793, 797 (Ky. 2007) (citing Manning v. Commonwealth, 23 S.W.3d 610, 614 (Ky. 2000)); RCr 9.54(1). While that duty includes instructions on any lesser included offenses which are supported by the evidence, that duty does not require an instruction on a theory with no evidentiary foundation. Houston v. Commonwealth, 975 S.W.2d 925, 929 (Ky. 1998) (citing Barbour v. Commonwealth, 824 S.W.2d 861, 863 (Ky. 1992), overruled on other grounds by McGinnis v. Commonwealth, 875 S.W.2d 518 (Ky. 1994)). "An instruction

5

on a lesser-included offense is required only if, considering the totality of the evidence, the jury could have a reasonable doubt as to the defendant's guilt of the greater offense, and yet believe beyond a reasonable doubt that he is guilty of the lesser offense." Baker v. Commonwealth, 103 S.W.3d 90, 94 (Ky. 2003) (citing Clifford v. Commonwealth, 7 S.W.3d 371, 377-78 (Ky. 1999)). A trial court's rulings on instructions are reviewed under an abuse of discretion standard. Ratliff v. Commonwealth, 194 S.W.3d 258, 274 (Ky. 2006) (citing Johnson v. Commonwealth, 134 S.W.3d 563, 569-70 (Ky. 2004)).

Strange argues that given his testimony that he just was just joking around with Thorpe when he poured or splashed the kerosene on her, he was entitled to a second-degree assault instruction based on a wanton state of mind. Notwithstanding Strange's assertion that he was just joking around when he poured kerosene on Thorpe, the evidence was undisputed that he intended to pour kerosene on her for the purpose of igniting it. Strange was not simply aware of and consciously disregarded a substantial risk that Thorpe's body would catch on fire when he poured kerosene on her and ignited her with a lighter or heater. According to Strange's own testimony, his conscious objective was to pour kerosene on Thorpe and light the kerosene for the purpose of setting her body on fire and burning her. Accordingly, the trial court did not abuse its discretion in denying Strange's motion for a second-degree wanton assault instruction.

## PROSECUTOR'S ASSERTION OF PERSONAL KNOWLEDGE OF FACTS

During the Commonwealth's direct examination of Thorpe, the following exchange occurred:

> Commonwealth: At that date or on that date, in February of 2006, where were you living?
>
> Thorpe: At the time of the accident?
>
> Commonwealth: Well, you call it an accident. Was it an accident?
>
> Thorpe: Well, no.
>
> Commonwealth: Okay. Let's don't use that word if it wasn't, because that's not what it was.
>
> Thorpe: Okay. I'm sorry.

At that point, defense counsel objected. The trial court overruled the objection, and the examination of Thorpe continued.

Strange argues that by telling the witness to not further characterize the incident as an accident, the prosecutor improperly inserted his knowledge of the facts into the record as decried in Berger v. United States, 295 U.S. 78, 84 (1935).

It is well established that a trial court's evidentiary rulings are reviewed under an abuse of discretion standard. Simpson v. Commonwealth, 889 S.W.2d 781, 783 (Ky. 1994). We do not view the prosecutor's questioning of Thorpe to be an assertion of personal knowledge. Given the charges against Strange, the Commonwealth's theory of the case was obviously that the fire

7

was not an accident, and the Commonwealth had already declared this was their theory in their opening statement. In light of Thorpe's testimony as to how the fire started, the prosecutor simply asked Thorpe whether it was an accident to clarify her testimony. The trial court did not abuse its discretion in allowing this line of questioning.

## TESTIMONY OF DETECTIVE BARNES

Kentucky State Police ("KSP") Detective Shane Barnes, a certified fire investigator for the KSP, was called as an expert witness by the Commonwealth. He testified to the results of his investigation of the fire at Strange's trailer and his conclusion that the fire was not accidental. On direct examination, Barnes was also questioned extensively about the kerosene heater found at the scene, without any objection by the defense. Barnes testified that the type of kerosene heater found at the scene had a safety shutoff that extinguishes the flame if it is tipped over or kicked hard. Barnes also testified that the heater had a wick enclosed by a glass glove and that the entire combustion chamber had a metal grill over it. In his final question on direct, the prosecutor asked Barnes, "Okay. Okay. So you don't have an exposed flame?" Barnes replied, "No, sir."

On cross-examination, defense counsel established that Barnes' testimony about the kerosene heater was based on his own personal experience with kerosene heaters. Defense counsel then proceeded to ask Barnes many of the same type of questions about another radiant oil heater found at the scene

8

that the Commonwealth had asked about the kerosene heater. Defense counsel also elicited the following testimony from Barnes:

> Defense: Okay. So you've ruled out that an accidental cause of the fire could have been from hitting the lighted kerosene simply because your personal experience with kerosene heaters told you that that didn't ever happen? Is that right?
>
> Barnes: Can you repeat that?
>
> Defense: Okay. You said it was not accidental. However, there was an open flame in that house there that night. Was there not? Or some type of flame in the house that night?
>
> Barnes: Could have been if the – if the heater was on.
>
> Defense: And the fuse was lit and there was an open flame in the house, correct?
>
> Barnes: Could be.
>
> Defense: And certainly an open flame with vapors of kerosene or diesel oil or anything else could cause a fire. Could it not?
>
> Barnes: Well, with that type of heater, what you're saying is there is a combustion chamber where the flame is housed. Yes, there is an open flame, but it's inside the glass housing.
>
> Defense: Assuming it's all working properly.
>
> Barnes: Yes, ma'am.
>
> Defense: Okay, we don't know whether it was working properly or not?
>
> Barnes: No, ma'am.

9

On re-direct, the Commonwealth asked Barnes, based on his experience and knowledge of this type of kerosene heater, if the grill on the front would get hot enough to burn a person if he touched it while the heater was on. Defense counsel objected on the grounds that Barnes' knowledge was "limited to his own personal experience with one kerosene heater." Defense counsel again objected when the Commonwealth asked Barnes where an open flame would have been on the kerosene heater. The court overruled the objection, reasoning that the witness had already testified about how the kerosene heater was made and how it worked.

Strange now complains on appeal that the trial court erred in allowing Barnes to give his opinion regarding the safety features of kerosene heaters in violation of Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999) (holding that trial courts should consider the specific factors in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), where they are reasonable measures of the reliability of expert testimony). However, as noted above, defense made no objection to Barnes' qualifications or the reliability of his testimony about kerosene heaters prior to trial or at anytime during the Commonwealth's direct examination of Barnes. And the defense itself elicited testimony from Barnes on cross-examination about how the kerosene heater and the other radiant oil heater worked, including testimony about the grill on the front and whether there was an open flame on the kerosene heater. It was not until re-direct that Strange expressed any objection to Barnes' testimony.

KRE 103(a)(1) requires a <u>timely</u> objection to preserve an issue regarding the admission of evidence. Just as in <u>Commonwealth v. Petrey</u>, 945 S.W.2d 417, 419 (Ky. 1997), Strange waived his right to object in the present case by failing to interpose a timely objection to Barnes' qualifications or the reliability of his expert testimony. Hence, the trial court did not abuse its discretion when it overruled Strange's objections.

## COMPUTER PRINT-OUTS OF DEFENDANT'S PRIOR CONVICTIONS

During the penalty phase, pursuant to KRS 532.055, the trial court allowed the Commonwealth to introduce computer print-outs of Strange's prior convictions in Kentucky for assault in the fourth degree, violation of an emergency protective order, DUI, and alcohol intoxication, all from 1994. The print-outs of the convictions were not offered through an authenticating witness, but were all certified by the Powell Circuit Court Clerk. The defense objected, arguing that the computer print-outs were not properly authenticated. The trial court overruled the objection on grounds that they were certified records of the best evidence that could be obtained of the 1994 convictions.

On appeal, Strange argues that under <u>Robinson v. Commonwealth</u>, 926 S.W.2d 853 (Ky. 1996), the computer print-outs of the prior convictions were not admissible without a witness who could testify to their authenticity. However, <u>Robinson</u> involved print-outs of out-of-state convictions, which were not certified. <u>Id.</u> at 854. In the instant case, KRS 422.040 is not implicated

11

because the convictions were not from another state or a federal court.

KRE 902(2) and (4) allow domestic public documents and official records to be self-authenticating if they are certified. See Merriweather v. Commonwealth, 99 S.W.3d 448, 452-53 (Ky. 2003). The present case is more akin to Hall v. Commonwealth, 817 S.W.2d 228, 230 (Ky. 1991), overruled on other grounds by Commonwealth v. Ramsey, 920 S.W.2d 526, 527 (Ky. 1996), wherein this Court held that a certified Kentucky State Police computer print-out of the defendant's prior convictions was admissible as proof of defendant's prior convictions for purposes of KRS 532.055, where there was no dispute as to the existence of the convictions or the content of the writing. Like Hall, Strange does not dispute the existence or the accuracy of the prior convictions at issue. Accordingly, the trial court did err not in allowing the evidence of the prior convictions to be admitted for truth-in-sentencing purposes.

### PAROLE ELIGIBILITY UNDER KRS 439.3401 DURING SENTENCING

During the defense's closing argument in the penalty phase, defense counsel attempted to inform the jury that because the offenses were violent offenses pursuant to KRS 439.3401, Strange would have to serve 85% of his sentence before he would be eligible for parole. Before the defense could finish so advising the jury, the Commonwealth objected, arguing that this information was not admissible. The court agreed and defense counsel voluntarily withdrew that portion of its argument. The court then granted the Commonwealth's motion for an admonishment and admonished the jury "to

12

disregard the last statement of defense counsel."

Strange argues that the trial court erred in refusing to allow the defense to inform the jury that as a "violent offender" under KRS 439.3401(3), he would be required to serve 85% of his sentence before he would be eligible for parole. KRS 532.055(a)(1) expressly allows evidence of the defendant's minimum parole eligibility to be adduced during the sentencing hearing. In Boone v. Commonwealth, 780 S.W.2d 615, 616-17 (Ky. 1989), we adjudged that that it was error for the trial court to refuse to allow the defense to put on evidence of the defendant's minimum parole eligibility under the "violent offender" provisions of KRS 439.3401. We held, "If 'Truth-in-Sentencing' is the objective sought by KRS 532.055, then either the defendant or the Commonwealth should be permitted to introduce evidence of minimum parole eligibility." Id. at 616. Thus, it was error for the trial court to refuse to allow the defense to put this information before the jury in the case at bar.

Our review of the error in this case, however, is confined to a palpable error standard because defense counsel voluntarily withdrew its argument, appearing to agree with the court's ruling and thus waiving the error. See Rogers v. Commonwealth, 992 S.W.2d 183, 187 (Ky. 1999). Under RCr 10.26, "[a] palpable error which affects the substantial rights of a party may be considered ... by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error." With

13

palpable error review, an unpreserved error requires reversal only "if a manifest injustice has resulted from the error," which means there "is [a] probability of a different result or [the] error [is] so fundamental as to threaten a defendant's entitlement to due process of law." Martin v. Commonwealth, 207 S.W.3d 1, 3 (Ky. 2006).

In this case, there was no minimum parole eligibility evidence put before the jury. The jury recommended a sentence of 20 years for the first-degree assault and 10 years for the second-degree arson, five years to run concurrently and five years to run consecutively, for a total of 25 years. The jury could have sentenced Strange to a maximum of 40 years. Given the heinous nature of the crime, we cannot say that there was a probability of a different result had the jury been aware of the 85% serve-out requirement in KRS 439.3401(3). Nor can we say that the error was so fundamental that it threatened Strange's entitlement to due process. Accordingly, there was no palpable error.

For the reasons stated above, the judgment of the Powell Circuit Court is affirmed.

All sitting. All concur.

14

COUNSEL FOR APPELLANT:

Susan Jackson Balliet
Assistant Public Advocate
Department of Public Advocacy
100 Fair Oaks Lane, Ste. 302
Frankfort, KY 40601


COUNSEL FOR APPELLEE:

Jack Conway
Attorney General

Todd Dryden Ferguson
Assistant Attorney General
Office of Attorney General
1024 Capital Center Drive
Frankfort, KY 40601